McCARTEN, APPELLANT, v. SANDERSON ET AL., RESPONDENTS.

(No. 8,183.)

(Submitted February 3, 1941. Decided February 5, 1941.)

[109 Pac. (2d) 1108.]

*Mr. C. T. Sanders,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. John M. Lexcen,* for Respondents, submitted a brief, and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Plaintiff appeals from a judgment rendered against him after an order sustaining defendants' motion to quash the alternative writ of mandate. The sole question involves the authority and duty of defendants as the Board of County Commissioners of Richland county under Chapter 84 of the 1937 Session Laws, as amended by Chapter 221 of the 1939 Session Laws.

The petition specifically negatives the various disqualifications provided by the Act, and alleges that the defendants approved two applications for 1940 for premises at Lambert and Savage, two unincorporated towns, and that plaintiff requested their written approval of his application for 1941 for premises about three miles from Sidney, but that they "without any hearing upon the truth or falsity of the statements made and sworn to by your petitioner in said application, and without any investigation into the truth or falsity of the statements made and sworn to in said application, and unmindful of its duty to your petitioner and of the requirements of the law, wholly refused, without cause, to give your petitioner written approval of said application for license," etc. The prayer is for a writ of mandate "compelling the defendant Board of County Commissioners of Richland County, Montana, to approve in writing

the application of your petitioner to the Montana Liquor Control Board for a retail liquor license in his name for the premises owned and operated by him," etc.

Without waiver of their motion to quash the alternative writ the defendants answered; plaintiff replied, and pursuant to a stipulation of the parties, a hearing was had on all questions of law and fact raised by both motion and answer.

The court's order is "that the motion must be and it is granted, the petition denied, and the proceedings dismissed"; but it discusses also the issues of law and fact raised by the answer, and in effect constitutes findings of fact, conclusions of law and a written opinion.

Introductory to the conclusions and written opinion in the order appears this succinct fact statement: "There is no dispute concerning the facts. They are very simple. It is conceded that the petitioner has conducted and is conducting his beer parlor in a lawful manner and that he is in all respects qualified as an applicant for the license in question. The sole reason for the board's refusal to approve his application is that the defendant board has determined not to approve any such application or applications for a license to sell liquor at retail in the vicinity of the city of Sidney—this because the board believes that a majority of the inhabitants of Sidney and in that vicinity are opposed thereto."

Those facts do not appear in the petition, which was the only pleading before the trial court on the motion to quash, and they have no proper place in the order granting the motion; but as no objection is made to them by plaintiff we will consider them as eliminating any question of a purely arbitrary refusal, without reason, to consider or approve plaintiff's application. The parties have not objected to them, and have stipulated that "the statement of facts set forth in the order sustaining the motion to quash" may be considered as part of the record of facts in the case. There would be no point in refusing to consider them as bearing upon the correctness of the trial court's action; for if a refusal to consider them as part of the record for that purpose should force us to conclude that the court was

wrong in its ruling on the motion, they would then necessarily be considered upon the issues raised by all the pleadings, and the result reached by the trial court would in any event have to be affirmed.

For that reason we may consider, for all practical purposes, that the petition has been amended by the stipulated evidence to show that the defendants' refusal to approve plaintiff's application is not arbitrary or without reason but is based upon their belief that a majority of the inhabitants of Sidney and vicinity are opposed to the issuance of such licenses. Abuse of discretion as such is not urged by plaintiff, but rather an excess or abuse of authority, on the theory that the defendants' sole authority was to pass upon the truth of the allegations in plaintiff's application.

The question therefore becomes simply one of interpretation of the statute with regard to defendants' powers; namely, whether they must approve the application of each applicant if he or his premises are not disqualified by the statute, or whether they are given discretionary powers to refuse their approval of applications for other reasons which, without abuse of discretion, they consider valid.

In 1937 the legislature enacted Chapter 84, providing for the retail sales of intoxicating liquors and wines under licenses to be granted by the Montana Liquor Control Board, and the Act was approved by the voters at the 1938 general election under their referendum powers. No provision for approval or control by local authorities was included in the Act. Section 28 merely made permissible a local license to those licensed by the state board, with local license fees, and in effect constituted the county, city and town authorities as local license boards for that purpose, without the power to make state licenses ineffective by refusing local ones.

By Chapter 221 of the 1939 Session Laws the legislature added a provision requiring "written approval of the application for license" to be obtained from the board of county commissioners, as a prerequisite to the issuance by the state board of licenses for premises lying outside of incorporated cities

and towns, and from the city or town authorities for premises lying within incorporated cities or towns.

Section 5 of Chapter 84 of the 1937 Session Laws, by virtue of said 1939 legislative amendment, reads as follows, the new portions being in italics:

*"Prior to the issuance of a license by the Montana liquor control board, any applicant for such license shall have first appeared before the licensing authority of the incorporated city or town in which the premises are to be licensed, or if such premises are situate outside of the boundaries of an incorporated city or town, the applicant for a license shall have appeared before the county commissioners of the county in which the premises are to be licensed, and from such authorities receive written approval of the application for license; whereupon the applicant shall file such written approval, properly authenticated by such city licensing authorities or board of county commissioners, along with an application in writing, to the Montana liquor control board,* signed by the applicant, and containing such information and statements relative to the applicant and the premises where the liquor is to be sold, as may be required by the Montana liquor control board. The application shall be verified by the affidavit of the person making the same before a person authorized to administer oaths. If any false statement is made in any part of said application, the applicant, or applicants, shall be deemed guilty of misdemeanor and upon conviction thereof the license, if issued, shall be revoked and the applicant, or applicants, subjected to the penalties provided by law.

*"And provided that nothing herein shall be construed as granting any additional powers to any city or county licensing board relating to the limitations of this Act not herein expressly conferred."*

Briefly, plaintiff's contention is that under the amended statute the function of the local authorities in giving their "written approval of the application for license," like that of the state licensing board in issuing the license, is merely to pass upon the qualifications of the applicant and his premises under the

law, and not to exercise any discretion otherwise; that it is merely cumulative and adds nothing but a further check upon the statutory qualifications and disqualifications of applicant and his premises to be licensed.

They base that argument partly upon the final provision of the section "that nothing herein shall be construed as granting any additional powers to any *city or county licensing board* relating to the limitations of this Act not herein expressly conferred." They consider that provision as a limitation necessitating a strict construction of the amended Act, to the effect that the powers "expressly conferred" upon the "city or county licensing board" are merely to certify the presence or absence of the qualifications or disqualifications of applicant and his premises, with no further discretion.

The contention cannot be sustained. In the first place, as stated above, the local authorities had already been authorized by section 28 of the 1937 statute to act as city or county licensing boards for the sole purposes of issuing city or county licenses supplemental to licenses issued by the state board, but without the power to nullify state licenses by denying local ones. That fact furnishes a reasonable explanation for the proviso that nothing in the amendatory Act shall be construed as granting "any city or county licensing board" any powers not therein expressly conferred. It indicates that once the license has been granted by the state board it cannot be nullified by the local board through the denial of a local license, any more than it could have been before the amendment. In other words, the additional authority granted local boards by the 1939 amendment relates only to the original approval of the application, which, once given, is conclusive upon it, and not subject to later control through its powers as a "city or county licensing board." That must be the meaning of the reference to "any city or county licensing board," for it is only in connection with the issuance of local licenses under section 28 of the 1937 Act that the local authority constitutes a "city or county licensing board." Obviously, it is not as a licensing board that it ap-

414

proves or disapproves the application to the state licensing board.

But in any event, there is nothing in the proviso which can logically serve to limit the ordinary meaning of the authority conferred by the main portion of the amendment. We must therefore consider what that meaning is. The 1937 Act, both before and after the amendment provides (section 3), that the state board "is hereby empowered, authorized and *directed* to issue licenses to qualified applicants," etc., and its authority to revoke or suspend licenses is quite strictly limited. But the amendment does not merely make the local authority an agent of the state board to aid the latter to perform its duties; the amendment requires the applicant to appear before it, receive its written approval, and file the approval with his application prior to the issuance of a license. The law, as amended, still expressly *directs* the state board to issue licenses to all qualified applicants obtaining the local authority's approval of their applications, but it does not *direct* the local board to approve the applications of all qualified applicants.

As we said in *Young* v. *Waldrop, ante,* p. 359 [109 Pac. (2d) 59] : "Our Code, sections 4, 15 and 10520, provide that statutory provisions 'are to be liberally construed with a view to effect their objects and to promote justice'; that words and phrases are, with certain exceptions not applicable here, to be 'construed according to the context and the approved usage of the language'; and that 'the intention of the legislature * * * is to be pursued if possible.' "

There is no occasion to construe the word "approval" otherwise than in its usual and accepted sense; neither the context nor the apparent intention of the legislature justifies any such departure; and we must assume that the legislature meant to use the word in the full ordinary meaning, and not subject to the express mandatory duty imposed on the state board of acting favorably upon all applications where the statutory requirements are met, nor as a duplication of or an advisory adjunct to, the state board's authority. The legislature found no difficulty in finding words directing the state

board to issue licenses to all those found qualified under the statute; and if it had intended merely to duplicate a finding of those qualifications it could readily have directed the local authority to approve all applications, subject only to the statutory requirements. "Approval" is the opposite of "disapproval"; it necessarily involves discretionary power, which ordinarily is complete unless limited in some way. Since the limitation contended for does not appear in the Act, either specifically or by necessary or reasonable implication, we may not read it in.

According to Webster's New International Dictionary (Merriam-Webster 2d ed.), "approval" means "approbation," "sanction," "endorsement," "support." "Approval of the application" is not ordinarily limited in meaning to a mere verification of the facts stated in the application. "Approval" implies knowledge and the exercise of discretion after knowledge (*State* v. *Duckett*, 133 S. C. 85, 130 S. E. 340), the exercise of judgment (*Leroy* v. *Worchester St. R. Co.*, 287 Mass. 1, 191 N. E. 39), the act of passing judgment, the use of discretion, and the determination as a deduction therefrom (*Melton* v. *Cherokee Oil & Gas Co.*, 67 Okl. 247, 170 Pac. 691; *In re State Bank*, 84 Utah, 147, 30 Pac. (2d) 211), unless limited by the context of the statute. (*Fuller* v. *Board of University and School Lands*, 21 N. D. 212, 129 N. W. 1029.) For other cases, see 3 Words and Phrases, Perm. Ed., 829–832. Here it is not limited by the context of the statute, and there seems to have been an obvious intent not to limit the local authority's discretion, like that of the state board, by directing the act to be done if only the applicant and premises possess the statutory qualifications. We cannot, therefore, limit our construction of "approval" as contended for by plaintiff.

It seems quite apparent why the legislature may have desired to allow the local authorities a discretion not granted to the state board, rather than merely to provide an additional check of qualifications. Sections 30 to 36 of the original Act provided for local option elections by counties, but only where sufficient petitions protesting the issuance of licenses were filed

within thirty days after the passage and approval of the Act. In view of the expiration of that provision, it is not surprising that the legislature restored a measure of local control by enacting the 1939 amendment.

It is well settled that mandamus will lie to compel a board to do a ministerial act about which it has no discretion; but that ordinarily mandamus will not lie unless, among other things, there is a clear legal duty, not involving discretion, on the part of the board (*State ex rel. School District* v. *Cooney*, 102 Mont. 521, 59 Pac. (2d) 48), or unless, where discretion is involved, the action is fraudulent or so arbitrary as to amount to a clear and manifest abuse of discretion. (*State ex rel. Bowler* v. *Board of County Commissioners*, 106 Mont. 251, 76 Pac. (2d) 648.)

In the first cited case this court quoted with approval the following statement from 38 C. J. 598, section 72: " 'The distinction between mere ministerial and judicial and other official acts is generally said to be that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.' "

Here it seems clear that the statute places in the defendants a discretion to approve or disapprove the application as a prerequisite to its presentation to the state board and the issuance of a license; their authority is not limited, either expressly or by implication, to the mere ministerial verification of the fact statements contained in the application.

It is agreed that the defendants did not act arbitrarily in denying plaintiff's application, but based their action on what they believed to be the majority will of the people in the vicinity affected. Certainly the courts cannot substitute their discretion for that of the defendants, nor conclude that the reason moving defendants' discretion was so lacking in substance or merit as necessarily to involve an abuse of discretion. It cannot, therefore, be held that the facts relied upon by plain-

tiff establish a clear legal duty on defendants' part to approve plaintiff's application.

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS and HONORABLE RUDOLPH NELSTEAD, District Judge, sitting in place of MR. JUSTICE ERICKSON, disqualified, concur.