STATE ex rel. WILEY, Relator, v. DISTRICT COURT
OF SIXTEENTH JUDICIAL DIST. et al., Respondents.

No. 8615

Submitted September 10, 1945. Decided October 16, 1945.

164 Pac. (2d) 358

Mr. Albert Anderson, of Helena, and Mr. P. F. Leonard. of Miles City, for relator and petitioner.

Mr. D. L. O'Hern and Mr. W. B. Leavitt, both of Miles City, for respondent.

Messrs. R. C. Dillavou, of Billings, Walter Aitken, of Bozeman, W. W. Mercer, of Roundup, Edmond G. Toomey, of Helena, Aronson & Foot, of Kalispell, Dan W. Maddox, of Hardin, S. P. Wilson, of Deer Lodge, P. E. Geagan and James F. O'Brien, both of Butte, H. C. Hall, of Great Falls, Fred Schilling, of Missoula, Desmond J. O'Neil, of Glendive, Paul & David Smith, of Helena, Thomas Malee, of Anaconda, Charles W. Davidson, of Great Falls, and Ralph J. Anderson, of Helena, amici curiae.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Relator is the holder of a license issued by the Liquor Control Board authorizing him to sell liquor at retail at 611 Main Street in Miles City. He has paid the license fee required for selling liquor and has likewise been issued a state beer license. After obtaining his state license he tendered to the city of Miles City an amount equal to 50% of the fees paid by him to the state board as a license fee to the city. The city refuses to accept the fee and to issue a city license. Relator proceeded to sell liquor at the place named in the state license and was arrested by the officials of the city of Miles City. He thereupon filed a complaint before the district court seeking an injunction enjoining the city and its police department from "interfering with, annulling, restricting, or rendering ineffective the retail liquor

license'' issued by the state board and enjoining them from entering the premises for the purpose of preventing him from operating as a retail liquor dealer, providing that he pays the license fee required by the city which he is willing to do.

The complaint, in addition to the foregoing facts, alleged that the premises in question are not on the same street or avenue within 600 feet of any building occupied exclusively as a church, synagogue, or other place of worship, or a school; that no complaint has been filed with the state board charging relator with the commission of any act which would be cause for the suspension or revocation of a state license; that the action of the city and its officers in refusing relator a license from the city is to make the state license ineffective; that the city and its officers acted arbitrarily in denying the local license and that it is their duty to permit relator to operate under the license issued by the state board; that the premises in question are equipped with front and back bars and with fixtures and equipment necessary for the operation of a retail liquor store and that relator has purchased from the state board a complete stock of liquor, investing large sums of money in the license, fixtures and stock, all of which will be lost to him if he is not permitted to operate.

To the complaint the city filed a general and special demurrer. The demurrer on the general ground was sustained and also the demurrer was sustained on two of the special grounds; namely, that it was unintelligible and uncertain in the following particulars: (1) ''That the complaint does not allege and it cannot be told therefrom whether the defendant city has provided for the issuance of licenses to persons to whom a license has been issued by the State Liquor Control Board''; and (2) ''That if defendant city has by ordinance or otherwise provided for the issuance of such license the said complaint does not allege nor can it be told therefrom the provisions or requirements thereof and whether or not the plaintiff complied with the provisions and requirements required by the defendant in making his application to the said city.'' Upon sustaining the

demurrer the court granted plaintiff, relator above-named, thirty days within which to file and serve an amended complaint. Plaintiff declining to plead further, judgment was entered in favor of the city, dismissing the action and awarding the city its costs.

Relator thereupon and by this proceeding seeks the supervisory powers of this court to annul the order and judgment of the court stressing the inadequacy of an appeal. Relator contends that under the statutes and prior decisions of this court the city of Miles City was without authority to decline to accept the license fee tendered by him, and that the city has no authority to interfere with his right to sell liquor pursuant to the license issued by the state board. He contends that the sole jurisdiction of selecting applicants to whom licenses shall be issued for the sale of liquor and the premises where they shall be sold rests in the state board and that when the state board has acted the city has no jurisdiction in the matter other than to provide for the collection of a city license fee which cannot exceed one-half of the fee paid to the state. The statutes relied upon by relator in support of his contention are Chapter 84 of the Laws of 1937; Chapter 221 of the Laws of 1939; and Chapter 163 of the Laws of 1941. In Chapter 84 the legislature, by way of preamble, declared it to be the policy of the state that it is necessary "to insure the entire control of the sale of liquor in the Montana liquor control board" to provide for certain things thereafter provided for in the Act. Section 5 of that chapter simply required the applicant to file an application before the state board without making any provision for consulting the local authorities. Section 28 of that chapter, however, contained this provision: "The city council of any incorporated town or city, or the county commissioners outside of any incorporated town or city, may provide for the issuance of licenses to persons to whom a license has been issued under the provisions of this act, and may fix license fees thereof, not to exceed a sum equal to fifty per cent (50%) of the license fee collected by the board from such licensee under this act."

Chapter 221 of the Laws of 1939 amended section 5 by inserting this clause: ''Prior to the issuance of a license by the Montana liquor control board, any applicant for such license shall have first appeared before the licensing authority of the incorporated city or town in which the premises are to be licensed, or if such premises are situate outside of the boundaries of an incorporated city or town, the applicant for a license shall have appeared before the county commissioners of the county in which the premises are to be licensed, and from such authorities receive written approval of the application for license; whereupon the applicant shall file such written approval, properly authenticated by such city licensing authorities or board of county commissioners, along with an application in writing, to the Montana liquor control board, * * *.''

With the statutes thus in force the case of McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 1110, 132 A. L. R. 1229, came before this court, wherein this court in stating the purpose of section 28 above referred to said: ''No provision for approval or control by local authorities was included in the act. Section 28 merely made permissible a local license to those licensed by the state board, with local license fees, and in effect constituted the county, city and town authorities as local license boards for that purpose, without the power to make state licenses ineffective by refusing local ones.'' The court further said: ''It indicates that once the license has been granted by the state board it cannot be nullified by the local board through the denial of a local license, any more than it could have been before the amendment.'' The court also pointed out that the effect of the 1939 amendment was to restore a ''measure of local control.''

Chapter 163 of the Laws of 1941 amended Chapter 221, Laws of 1939, by eliminating that part of section 5 above quoted. It seems clear to us that the purpose of eliminating the language appearing in section 5 of Chapter 221 was to again deprive the local authorities of that ''measure of local control'' restored by the amendment made in 1939. In effect that is what this court

held in State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292, 295, where this court said: "It may be unfortunate that the legislature has seen fit to remove all measure of local control, but its reason for repealing the requirement that local authorities' approval be obtained may well have been for the sole purpose of preventing arbitrary action. Certainly in enacting the repeal statute it made no provision for intrusting to the defendant board the arbitrary power thus taken away from the local authorities."

Respondents rely upon the case of State ex rel. McIntire v. ▆ City Council of the City of Libby, 107 Mont. 216, 82 Pac. (2d) 587, wherein this court held that the city has the right by ordinance to limit the number of places where beer may be sold within the city. That case relied upon sections 5039.3 and 2815.44, both of which were passed long before the statutes relied upon by relator and, under familiar rules, to the extent of any repugnancy they are controlled by the later statutes. It is true that Chapter 84 of the Laws of 1937 was in effect when that decision was rendered and was considered by the court in its opinion.

We think the effect of the McCarten cases, supra, was to ▆ overrule the Libby case so far as it attempted to justify the city in limiting the number of beer licenses when to do so had the effect of nullifying the license issued by the state board, as here. It is our view that, because of the statutory history of our laws on the subject when construed in the light of the language employed in the McCarten cases, the city has no discretion when once the state board has issued a license to an applicant as here and may not prevent the licensee from engaging in business. This conclusion is further fortified by the fact that no provision is made for a refund of the state license fee if the city should exercise its claimed right to deny the right of the licensee to operate under the state license.

This conclusion is further evidenced by the definition of the word "License" as given in section 2, Chapter 84, Laws of 1937, wherein it is provided that "License" means a "license issued

by the Montana liquor control board to a qualified person under which it shall be lawful for the licensee to sell and dispense liquor at retail as provided in this act.''

There being nothing in the act to indicate that the state license is in any way subject to being nullified or made ineffective by local action, relator was and is entitled to sell liquor under the state license subject only to the payment of the fee which might be exacted by the city not exceeding in amount 50% of the fee paid to the state.

Was plaintiff justified in seeking injunctive relief? The general rule is that a court of equity will not restrain criminal prosecutions. A well established exception is that equity will intercede when property rights are about to be invaded by a threatened prosecution under a void statute. State ex rel. Freebourn v. District Court, 85 Mont. 439, 279 Pac. 234. Here we must assume that the prosecution is based upon a city ordinance, otherwise there would be no basis for the prosecution.

As above noted, any city ordinance which attempted to operate in such a way as to make relator's state license ineffective was and is void. There being no valid law justifying the prosecution and relator having shown that his property rights are being invaded, the proper proceeding is by way of injunction. The court erred in sustaining the demurrer to the complaint. The judgment is set aside and the cause remanded to the district court with directions to vacate and set aside its order sustaining the demurrer and to enter an order overruling it and for such further proceedings, in accordance with this opinion, as may be proper.

Mr. Chief Justice Johnson and Associate Justices Adair and Cheadle concur.

Mr. Justice Morris (dissenting).

I dissent. The issuance of a retail liquor license is an exercise of a police power of the state. Johnson v. City of Great Falls, 38 Mont. 369, 99 Pac. 1059, 1061. In the same case it was said, ''That the police power may be exercised concurrently by the

state and a municipality is a general rule of law recognized almost everywhere.''

''While ordinarily municipal corporations in matters appertaining to police regulations enjoy substantially the entire police power of the state, in so far as regards matters of local concern, there is a distinction to be made between the general police power of a sovereign state and the delegated police powers of a municipal corporation. * * * The police powers of municipal corporations are limited to subjects of local affairs or local concerns.'' 43 C. J. page 204, sec. 203.

The legislative powers authorizing Montana municipal corporations to exercise police powers, particularly in the matter of issuing licenses, is granted by express legislative Acts. Section 5039, Revised Codes, provides: ''The city or town council has power: To make and pass all by-laws, ordinances, orders, and resolutions, not repugnant to the constitution of the United States or of the state of Montana, or of the provisions of this title, necessary for the government or management of the affairs of a city or town, for the execution of the powers vested in the body corporate, and for carrying into effect the provisions of this title.''

This court, in State ex rel. Altop v. City of Billings, 79 Mont. 25, 255 Pac. 11, 13, having under consideration the question as to whether a license should be issued to an applicant, held that the business of conducting a rooming house, although a legitimate one, is so far concerned with the public health, morals and welfare of the public, that it is within the police power of the city to regulate it under the authority conferred by this section, denominated the ''general welfare clause.''

It was held in State ex rel. Moreland v. Police Court, 87 Mont. 17, 22, 285 Pac. 178, that notwithstanding repeal of the state prohibition laws, a city has the power to prohibit by ordinance, traffic in intoxicating liquors under its general powers granted it by this section, and the specific provision of section 5039.25 under which it may pass ordinances to prevent acts or conduct

calculated to disturb the public peace or which are offensive to public morals.

Again this court, in State ex rel. City of Butte v. Police Court, 65 Mont. 94, 210 Pac. 1059, in construing section 5039, Revised Codes, held that the statute creating a municipality, or under which it exists, is the charter of its powers, and it has only such authority as is conferred expressly and such as is necessarily implied or is indispensable in order properly to accomplish the purpose of its organization.

Section 5039.2, Revised Codes, provides: "A city or town council has power: To license all industries, pursuits, professions, *and occupations,* and to impose penalties for failure to comply with such license requirements." This section of the statute clearly vests the power in the municipal authorities of the state to license occupations and certainly conducting a retail saloon is an occupation.

The legislature has further provided by section 5039.3 that, "The city or town council has power: To fix the amount, terms and manner of issuing and revoking licenses; *but the council may refuse to issue licenses when it may deem it best for the public interests.*"

I think the conclusions of the court in the McCarten cases, cited by the majority, in interpreting the amendments to the liquor laws, invaded the implied constitutional powers of municipalities. The whole system of American government is grounded upon the right of the people to control their local affairs—Home rule. In 11 Am. Jur. under the head of Constitutional Law, page 934, et seq., sections 223 and 224, it is said:

"It is a well-settled rule, supported with practical unanimity by the authorities, that the general doctrine prohibiting the delegation of legislative authority has no application to the vesting in political subdivisions of powers to govern matters which are local in scope. * * * The constitutional maxim which prohibits the legislature from delegating its power to any other body or authority is not violated by vesting municipal corporations with certain powers of legislation as to matters purely of

local concern of which the parties immediately interested are supposed to be better judges than the legislature.''

And again the same authority says, in section 256 on Constitutional Law, page 988: ''The general authority of the legislature to enact regulations in the exercise of the police power may, in matters of local concern, be delegated to the appropriate municipal corporation or political subdivision. Since this power resides in the state in its sovereign capacity, it can be possessed and exercised by a municipal corporation, technically speaking, only when delegated to it by the lawmaking power of the state, either expressly or by necessary implication, because from a purely technical standpoint, a municipal corporation has no inherent power to enact police regulations. Nevertheless, the power appears to be impliedly granted to every municipal corporation from the mere fact of its organization as a governmental subdivision.''

Every municipality upon its incorporation is vested, by the statutes cited above, with such police powers as are essential to its efficient discharge of the functions of local self-government, and such powers are safeguarded by numerous constitutional provisions. The statutes mentioned have not been repealed and I am convinced that anyone who attempted to have them repealed might be commended for his audacity but not for his wisdom. Section 36 of Article V of the Constitution prohibits the legislature from enacting any law by which any power is vested in any ''special commission * * * to perform any municipal function whatever.'' This constitutional provision and others are ample authority to uphold the contention that the State Liquor Board cannot be empowered to issue to any one a liquor license and deny the local authorities the right to exercise the veto power authorized by section 5039.3, Revised Codes.

On Petition for Rehearing.

Per Curiam.

The petition for rehearing is denied.

Mr. Chief Justice Johnson and Associate Justices Adair and Cheadle concur.

Mr. Justice Angstman (dissenting.)

On motion for rehearing I have given further consideration to this case. Extensive briefs have been filed by the parties as well as by others who have been permitted to appear amici curiae. As a result of further study of the case, I am of the opinion that the former opinion is erroneous and that the trial court was correct in sustaining the demurrer to the complaint.

In the first place I think the former opinion placed undue emphasis upon certain language used in the opinions in the cases of McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229, and State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292. Neither of those cases dealt with the question of the right of the city to limit the number of liquor licensees.

The first case was brought against the County Commissioners to require them to approve of the application before its submission to the state board. It held that under the amendment of 1939 the County Commissioners had the power and discretion to either approve or disapprove of the application as long as they did not act arbitrarily.

The second case above cited was brought against the state board to compel it to issue a license.

This court held that a complaint showing that petitioner and his premises are qualified to be licensed under the statute states facts sufficient to constitute a cause of action so as to withstand a motion to quash and that if the board had a defense it was incumbent upon the board to plead and prove it. Hence, since neither case had anything to do with the power of the city council to restrict the number of licensees, nothing has yet interceded to change the rule stated in the case of State ex rel. McIntyre v. City Council of the City of Libby, 107 Mont. 216, 82 Pac. (2d) 587. In that case it was squarely held that the city may limit the number of licenses issued within the city. The statutory law is exactly the same today as it was when the Libby case was decided. I think that since the legislature has not changed the statute on this point since the Libby case was

decided, though it did change the statute in other respects not material here, the indication is that the legislature was and is satisfied with the rule there stated. Bottomly v. Ford, Mont., 157 Pac. (2d) 108, and State ex rel. McCarten v. Harris, supra.

It follows that if the city may limit the number of licensees within the city it may cease to issue licenses after the limit has been reached.

If the city may refuse the issuance of a license on any ground, then it must be assumed that its officers are acting legally and not arbitrarily. Section 10606, subd. 15. Hence I think the court properly sustained the demurrer to the complaint.

I should say too that I think some of the broad language used in the second McCarten case, supra, as to the extent of local control must be treated as dictum because that point was not involved in the case and there was no occasion to give it consideration. I should add too that the amendment made by Chapter 221, Laws of 1939, had nothing to do with the rule stated in the Libby case. It dealt with the matter of procedure in procuring a state license. By it the approval of the city had to be submitted with the application for a state license. The repeal by Chapter 163 of the Laws of 1941 of what had been added in 1939 likewise did not affect the rule stated in the Libby case.

For another reason, I think the court properly sustained the demurrer.

The complaint filed by relator to enjoin the city and its chief of police is not clear as to what charge was preferred against relator or the exact nature of the prosecution.

In such a situation we must treat as directly averred whatever is necessarily or reasonably implied from that which is directly averred. Cook v. Galen, 83 Mont. 334, 272 Pac. 250. Thus viewing the complaint the reasonable implication from what is directly averred is that relator was arrested for not having a city license which it is alleged the city wrongfully refused to issue.

In the application made by relator before this court it is alleged that the city through its chief of police "arrested the

plaintiff solely on the ground that he had not obtained a city liquor license which the city had refused.'' While this allegation is denied by respondents in the proceedings in this court, it cannot be unfair to relator to accept his statement as to the cause of his arrest. When we do this we must reach the conclusion that the court was right in sustaining the demurrer to the complaint.

The rule is well established that it is no defense to a criminal prosecution for the sale of intoxicating liquor without a license that the officials wrongfully refused to issue a license. City of Montpelier v. Mills, 171 Ind. 175, 85 N. E. 6, 17 Ann. Cas., p. 57, and see list of supporting cases on page 60. There are some cases taking the contrary view but the overwhelming weight of authority supports the view as above stated.

The same reasoning supports the view that the wrongful refusal to issue a license is no cause for restraining criminal prosecutions for selling without a license. Relator's remedy, if the action of the city in refusing to issue a license be wrongful, is to compel the issuance of a license by mandamus.

In my opinion the court was right in sustaining the demurrer to the complaint and hence I think the foregoing opinion should be changed on the motion for rehearing or else the motion should be granted.

Mr. Justice Morris:

Having disagreed with the majority opinion in the first instance, I agree with the foregoing dissenting opinion of Mr. Justice Angstman.

Per Curiam.

This court, consisting of five justices, heard and considered this cause. Four of the justices concurred in a written opinion prepared by one of their number, the effect of which is to hold that the complaint filed in the district court by the plaintiff Wiley sets forth sufficient facts to constitute a cause of action for which reason the demurrer to such complaint, interposed by the defendant city, should be overruled. When this is done the defendant city will be permitted to file an answer and to set

forth therein any and all defenses that the city may have to such action.

The written opinion so prepared was signed by four of the justices and thereupon pronounced and filed as the decision of this court. The fifth justice did not concur and in a written opinion set forth his reasons for dissenting.

The defendant thereupon filed a petition for rehearing in the cause and, a majority of the justices concurring, this court made its order denying such petition. In the meantime, the author of the court's decision herein, no longer entertaining the views set forth by him in the opinion to which he and three of his associates had subscribed, has prepared a written explanation of his change in attitude. While the original opinion so written by him stands as the decision of the court herein, the justice may nevertheless file herewith his criticism and objections to the pronouncement of the court so made.

The case of McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229, is clearly not in point. However, the case of State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292, decided by this court on July 10, 1941, like the present case, involved the power of local authorities, in the absence of legislative authorization, to nullify a state liquor license duly issued by the Montana state liquor control board under particular legislative enactments which not only clearly show, but wherein the legislature has expressly declared it to be the policy of the state to place "and to insure the entire control of the sale of liquor in the Montana liquor control board." Laws 1937, c. 84, sec. 1.

This action is not concerned with the state beer licenses as it involves only a state liquor license. Likewise, in neither the instant case nor in the case of State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292, supra, is there involved the specific question of the right of a city to limit the number of licenses that shall be issued for places operating within its boundaries.

There is here presented no question governed by the general

and comprehensive statutes, sections 5039.2 and 5039.3, Revised Codes, authorizing cities generally to license businesses and occupations, which general statutes were enacted long prior to the special and specific legislative acts dealing particularly with the sale and the licensing of the sale of intoxicating liquor in this state, namely, Chapter 175, Laws of 1917; Chapter 105, Laws of 1933; Chapter 84, Laws of 1937; Chapter 221, Laws of 1939; and Chapter 163, Laws of 1941, as well as the 18th and 21st Amendments to the Federal Constitution.

In the first place Chapter 175, Laws of 1917, specifically ▆ provides for the repeal after the 31st day of December, 1918, of all acts in conflict and "particularly all laws of this State and all ordinances of cities and towns relating to the issuance of liquor licenses." Thus did all the theretofore existing laws of this state and ordinances of the respective cities and towns thereof relating to the issuance of liquor licenses pass out and become a dead letter on December 31, 1918, and by special and specific legislation were the cities and towns divested of the power to license the sale of liquor under the general statutes, viz., sections 5039.2 and 5039.3, Revised Codes, supra.

In the next place the special statutes being later enactments ▆ of the legislature relating to the liquor traffic and to the licensing of the sale of liquor, control the more general provisions of sections 5039.2 and 5039.3, Revised Codes, and will be regarded as an exception to or qualification of the prior general statutes. Carland v. Commissioners of Custer County, 5 Mont. 579, 598, 6 Pac. 24; Reagan v. Boyd, 59 Mont. 453, 197 Pac. 832; In re Stevenson's Estate, 87 Mont. 486, 289 Pac. 566; State ex rel. Ewald v. Certain Intoxicating Liquors, 71 Mont. 79, 84, 227 Pac. 472. Again it is quite clear that neither the decision in the instant case nor that in the McCarten case, supra, has any effect whatever upon zoning ordinances or matters other than the power of towns and cities to interfere with the control by the Montana liquor control board of the liquor traffic in this state and in particular with the licensing of retail liquor dealers of which the legislature has seen fit to

place the unfettered, full, complete, and entire control in the Montana liquor control board which it created for such purpose.

This court held in the McCarten case, supra, and it now ▇ holds in this case, that the legislature has delegated to the Montana liquor control board the control of the licensing of retail liquor dealers in this state and that the respective towns and cities of the state have not been granted the power to divest the Montana liquor control board of that control nor to nullify nor render void and useless the state liquor licenses duly issued by such board.

While the judicial system recognizes dissents and dissenting opinions to final decisions of the court, yet it does not recognize any·such thing as a dissent or a dissenting opinion to a mere order of the court; however, the court has no objection to the expression of the foregoing statements in this particular instance without establishing a precedent therefor nor recognizing such procedure.

Mr. Chief Justice Johnson and Associate Justices Adair and Cheadle concur.

Rehearing denied December 19, 1945.