STEPHENS, Appellant, *v.* CITY OF GREAT FALLS Et Al., RESPONDENT.

No. 8658

Submitted September 18, 1946. Decided December 10, 1946.

175 Pac. (2d) 408

Mr. H. C. Hall, of Great Falls, for appellant.

Mr. Charles Davidson, Mr. H. R. Eickemeyer, and Messrs. Church & Wuerthner, all of Great Falls, for respondent.

MR. JUSTICE ADAIR delivered the opinion of the Court.

Action by A. C. Stephens, plaintiff, against the defendants City of Great Falls, Montana, and the mayor, clerk and members of the city council thereof seeking a declaratory judgment declaring the suspension of two certain city ordinances purporting to repeal the provisions of two earlier ordinances limiting the number of retail *beer licenses* and of retail *liquor licenses* to be issued in said city. From a judgment dismissing the complaint after sustaining defendants' general demurrers thereto the plaintiff appeals.

The complaint shows the following facts:

Section 5 of Ordinance No. 845 of the City of Great Falls limits the number of retail *beer licenses* to be issued in said city to one license for every 675 of population, or major fraction thereof, in said city.

Section 5 of Ordinance No. 846 of the city limits the number of retail *liquor licenses* to be issued in said city to one license for every 1000 of population, or major fraction thereof, in said city.

On August 13, 1945, the city council of Great Falls passed and the mayor approved city ordinances Nos. 931 and 932.

Ordinance No. 931 provides for the repeal of section 5 of Ordinance No. 845 limiting the number of *beer licenses* while Ordinance No. 932 provides for the repeal of Section 5 of Ordinance No. 846 limiting the number of *liquor licenses* to be issued in the city.

On September 12, 1945, and within thirty days after the passage of the repealing ordinances, a petition was filed with the defendant city clerk addressed to the city council and signed by more than five per cent of the qualified electors of Great Falls demanding that, pursuant to sections 5061 to 5067, inclusive, Revised Codes of Montana, 1935, there be submitted to the electors of the city a referendum on the repealing ordinances, Nos. 931 and 932.

In the year 1945 the number of retail *beer licenses* to be issued under Ordinance No. 845 was limited to 44 and the number of retail *liquor licenses* to be issued under Ordinance No. 846 was limited to 30, and the maximum number of retail *beer licenses* and the maximum numer of retail *liquor licenses* had been issued by the city clerk of the defendant city prior to the passage of the repealing ordinances.

The plaintiff is a citizen of the United States and of the state of Montana, a citizen, resident and taxpayer of the city of Great Falls, and, as such, entitled to vote at all elections held within said city. He is also one of the signers of the aforementioned petition and brings the action in his own be-

half and in behalf of all other citizens and electors of the defendant city who may desire to join with him in seeking the relief for which he prays.

The complaint recites that the defendants are uncertain as to whether the filing of the petition with the city clerk effects a suspension of the repealing ordinances; that after September 12, 1945, defendants will be compelled "to either issue such additional licenses for the sale of beer and liquor at retail as may be applied for or to defend a multitude of actions which will be brought to compel the issuance of such licenses;" that "to avoid such litigation and in order to have a proper, definite and certain interpretation of the laws of Montana and the ordinances of the city of Great Falls in respect aforesaid for the guidance of the electors and officials of said city, plaintiff requests that the Court declare by its judgment herein that * * * upon the filing of the petition aforesaid * * * the operation of Ordinances No. 931 and No. 932 was in all respects suspended and that such suspension continues until said Ordinances have been accepted by the electors of said City at an election held for such purposes, and for a period of five days after the vote of acceptance has been officially announced."

It is well settled that the granting of licenses to carry on █ particular businesses, occupations, trades or callings is an attribute of the sovereignty of the state and one which, under our Constitution is exercised by the legislative department of the state. Possessing this power, the legislative department may, by general or special enactment, delegate same to other agencies of the government.

There is no principle of law better established than that a ██ city has no power, except such as is conferred upon it by legislative grant, either directly or by necessary implication. City of Helena v. Kent. 32 Mont. 279, 80 Pac. 258, 4 Ann. Cas. 235; Lazich v. City of Butte, Montana., 154 Pac. (2d) 260. Resting as it does upon legislative grants the legislative branch of the government may, at its pleasure, modify or withdraw the power so granted. "It may, if it chooses, repeal any charter,

or any law under which municipalities may be created, and destroy any municipal corporation at its will and pleasure." Brackman's v. City of Huntington, 126 W. Va. 21, 27 S. E. (2d) 71, 73.

Section 4955, Revised Codes of 1935, being section 3202 of the 1907 Codes, provides "A city or town is a body politic and corporate, with the general powers of a corporation, and the powers specified or necessarily implied in this chapter, or in special laws heretofore enacted."

Section 5039.2, Revised Codes of 1935, being subdivision 3, section 3259 of the 1907 Codes, provides: "The city or town council has power: To license all industries, pursuits, professions, and occupations, and to impose penalties for failure to comply with such license requirements."

Section 5039.3, Revised Codes of 1935, being subdivision 4, section 3259 of the 1907 Codes, provides: "The city or town council has power: To fix the amount, terms and manner of issuing and revoking licenses; but the council may refuse to issue licenses when it may deem it best for the public interests."

Prior to the effective dates of the 18th Amendment to the United States Constitution and of Chapter 175, Laws of 1917, enacted by a referendum vote of the people of the state of Montana at a general election held November 7, 1916, the liquor business in Montana was conducted in much the same manner as any other business under the competitive system, being subject to such regulations as were established from time to time by the lawmaking bodies and the municipalities operating under the *general* powers granted by sections 3202 and subdivisions 3 and 4 of section 3259 of the 1907 Codes, now sections 4955, 5039.2 and 5039.3, Revised Codes of 1935, to license generally industries, pursuits, professions and occupations.

"Primarily, intoxicating liquors and the liquor traffic are ▇▇ subject to the police power of the several states, to which the power, together with the mode of its exercise and full police authority to make it effective, is reserved." 30 Am. Jur., Intoxicating Liquors, p. 264, sec. 22.

The ushering in by a referendum vote of the people of state-wide prohibition, and the adoption of the 18th Amendment to the Federal Constitution made a radical change in the theretofore existing policy of the state with respect to the liquor business, Chapter 175, Laws of 1917, specifically providing for the repeal of all acts in conflict therewith and "particularly all laws of this State and all ordinances of cities and towns relating to the issuance of liquor licenses." Thus by their referendum vote effective from and after the 31st day of December, 1918, did the people of the state of Montana expressly repeal "all ordinances of cities and towns relating to the issuance of liquor licenses" as well as the power granted municipalities to issue such licenses, thereby divesting the municipalities of the power to license the sale of liquor under the *general* statutes, namely, sections 5039.2 and 5039.3, Revised Codes, supra.

Municipalities may only exercise powers not in conflict with general law, unless the power to do so is plainly and specifically granted. Brackman's v. City of Huntington, supra.

Section 4958, Revised Codes of 1935, being section 3205 of the 1907 Codes, provides that a city "has such other powers as are incident to municipal corporations *not inconsistent with the laws* of the United States or *the state*." (Emphasis ours.)

Prohibition continued as the public policy of Montana from December 31, 1918, until another most radical change in the policy of the state was effected by the enactment by the 1933 legislature of the State Liquor Control Act of Montana, Chapter 105, Laws of 1933, and of the Montana Beer Act, Chapter 106, Laws of 1933.

The State Liquor Control Act, Chapter 105, Laws of 1933, constituted the state board of examiners, comprising the governor, attorney general and secretary of state, as the "Montana Liquor Control Board" with the power and duty of administering the Act. The power to issue liquor licenses of which the cities and towns were divested by the referendum vote of the people at the election of November 7, 1916, Chapter 175,

Laws of 1917, was not restored by the original State Liquor Control Act, Chapter 105, Laws of 1933.

In 1937 the legislature enacted Chapter 84, Laws of 1937, providing for sales at retail of intoxicating liquors and wines under licenses to be granted by the Montana Liquor Control Board, which Act was approved by the electors by a referendum vote at the 1938 general election.

In 1939 the legislature, by the enactment of Chapter 221, Laws of 1939, further amended the State Liquor Control Act. The new enactment amended section 5 of Chapter 84, Laws of 1937, to read:

"Section 5. *Prior to the issuance of a license by the Montana liquor control board, any applicant for such license shall have first appeared before the licensing authority of the incorporated city or town in which the premises are to be licensed, or if such premises are situate outside of the boundaries of an incorporated city or town, the applicant for a license shall have appeared before the county commissioners of the county in which the premises are to be licensed, and from such authorities receive written approval of the application for license; whereupon the applicant shall file such written approval, properly authenticated by such city licensing authorities or board of county commissioners, along with an application in writing, to the Montana liquor control board,* signed by the applicant, and containing such information and statements relative to the applicant and the premises where the liquor is to be sold, as may be required by the Montana liquor control board. The application shall be verified by the affidavit of the person making the same before a person authorized to administer oaths. If any false statement is made in any part of said application, the applicant, or applicants, shall be deemed guilty of misdemeanor and upon conviction thereof the license, if issued, shall be revoked and the applicant, or applicants, subjected to the penalties provided by law.

"*And provided that nothing herein shall be construed as granting any additional powers to any city or county licensing*

*board relating to the limitations of this act not herein expressly conferred.''* Sec. 2, Chapter 221, Laws of 1939.

Under the familiar maxim, Expressio Unius Est Exclusio Alterius, the legislature has made manifest its intent to inhibit all powers of cities and towns over the matter of intoxicating liquors, except as to those powers specifically enumerated.

In State ex rel. Wiley v. District Court, Mont., 164 Pac. (2d) 358, 360, this court said:

"In Chapter 84 the legislature, by way of preamble, declared it to be the policy of the state that it is necessary 'to insure the entire control of the sale of liquor in the Montana liquor control board' to provide for certain things thereafter provided for in the Act. Section 5 of that chapter simply required the applicant to file an application before the state board without making any provision for consulting the local authorities. Section 28 of that chapter, however, contained this provision: 'The city council of any incorporated town or city, or the county commissioners outside of any incorporated town or city, may provide for the issuance of licenses to persons to whom a license has been issued under the provisions of this act, and may fix license fees thereof, not to exceed a sum equal to fifty per cent (50%) of the license fee collected by the board from such licensee under this act.'

"Chapter 221 of the Laws of 1939 amended section 5 * * *.

"With the statutes thus in force the case of McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 1110, 132 A. L. R. 1229, came before this court, wherein this court in stating the purpose of section 28 above referred to said: 'No provision for approval or control by local authorities was included in the act. Section 28 merely made permissible a local license to those licensed by the state board, with local license fees, and in effect constituted the county, city and town authorities as local license boards for that purpose, without the power to make state licenses ineffective by refusing local ones.' The court further said: 'It indicates that once the license has been granted by the state board it cannot be nullified by the local

board through the denial of a local license, any more than it could have been before the amendment.' The court also pointed out that the effect of the 1939 amendment was to restore a 'measure of local control.'

"Chapter 163 of the Laws of 1941 amended Chapter 221, Laws of 1939, by eliminating that part of section 5 above quoted. It seems clear to us that the purpose of eliminating the language appearing in section 5 of Chapter 221 was to again deprive the local authorities of that 'measure of local control' restored by the amendment made in 1939. In effect that is what this court held in State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292, 295, where this court said: 'It may be unfortunate that the legislature has seen fit to remove all measure of local control, but its reason for repealing the requirement that local authorities' approval be obtained may well have been for the sole purpose of preventing arbitrary action. Certainly in enacting the repeal statute it made no provision for intrusting to the defendant board the arbitrary power thus taken away from the local authorities.'

"Respondents rely upon the case of State ex rel. McIntire v. City Council of City of Libby, 107 Mont. 216, 82 Pac. (2d) 587, wherein this court held that the city has the right by ordinance to limit the number of places where beer may be sold within the city. That case relied upon section 5039.3 and 2815.44, both of which were passed long before the statutes relied upon by relator and under familiar rules to the extent of any repugnancy they are controlled by the later statutes. * * *

"We think the effect of the McCarten cases, supra, was to overrule the Libby case so far as it attempted to justify the city in limiting the number of beer licenses when to do so had the effect of nullifying the license issued by the state board, as here. It is our view that, because of the statutory history of our laws on the subject when construed in the light of the language employed in the McCarten cases, the city has no discretion when once the state board has issued a license to an applicant as here and may not prevent the licensee from engaging

in business. This conclusion is further fortified by the fact that no provision is made for a refund of the state license fee if the city should exercise its claimed right to deny the right of the licensee to operate under the state license.

"This conclusion is further evidenced by the definition of the word 'License' as given in section 2, Chapter 84, Laws of 1937, wherein it is provided that 'License' means a 'license issued by the Montana liquor control board to a qualified person under which it shall be lawful for the licensee to sell and dispense liquor at retail as provided in this act.'

"There being nothing in the Act to indicate that the state license is in any way subject to being nullified or made ineffective by local action, relator was and is entitled to sell liquor under the state license subject only to the payment of the fee which might be exacted by the city not exceeding in amount 50% of the fee paid to the state."

Again on petition for rehearing in the Wiley case, supra:

"The case of McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229, is clearly not in point. However, the case of State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292, decided by this court on July 10, 1941, like the present case, involved the power of local authorities, in the absence of legislative authorization, to nullify a state liquor license duly issued by the Montana state liquor control board under particular legislative enactments which not only clearly show, but wherein the legislature has expressly declared it to be the policy of the state to place 'and to insure the entire control of the sale of liquor in the Montana liquor control board.' Laws 1937, c. 84, sec. 1. * * *.

"There is here presented no question governed by the general and comprehensive statutes, section 5039.2 and 5039.3, Revised Codes, authorizing cities generally to license businesses and occupations, which general statutes were enacted long prior to the special and specific legislative acts dealing particularly with the sale and the licensing of the sale of intoxicating liquor in this state, namely, Chapter 175, Laws of 1917; Chapter 105,

Laws of 1933; Chapter 84, Laws of 1937; Chapter 221, Laws of 1939; and Chapter 163, Laws of 1941, as well as the 18th and 21st Amendments to the Federal Constitution.

"In the first place Chapter 175, Laws of 1917, specifically provides for the repeal after the 31st day of December, 1918, of all acts in conflict and 'particularly all laws of this State and all ordinances of cities and towns relating to the issuance of liquor licenses.' Thus did all the theretofore existing laws of this state and ordinaces of the respective cities and towns thereof relating to the issuance of liquor licenses pass out and become a dead letter on December 31, 1918, and by special and specific legislation were the cities and towns divested of the power to license the sale of liquor under the general statutes, viz., sections 5039.2 and 5039.3, Revised Codes, supra.

"In the next place the special statutes being later enactments of the legislature relating the liquor traffic and to the licensing of the sale of liquor, control the more general provisions of sections 5039.2 and 5039.3, Revised Codes, and will be regarded as an exception to or qualification of the prior general statutes. Carland v. County of Custer, 5 Mont. 579, 598, 6 Pac. 24; Reagan v. Boyd, 59 Mont. 453, 197 Pac. 832; In re Stevenson's Estate, 87 Mont. 486, 289 Pac. 566; State ex rel. Ewald v. Certain Intoxicating Liquors, 71 Mont. 79, 84, 227 Pac. 472. Again it is quite clear that neither the decision in the instant case nor that in the McCarten case, supra, has any effect whatever upon zoning ordinances or matters other than the power of towns and cities to interfere with the control by the Montana liquor control board of the liquor traffic in this state and in particular with the licensing of retail liquor dealers of which the legislature has seen fit to place the unfettered, full, complete, and entire control of the Montana liquor control board which it created for such purpose.

"The court held in the McCarten case, supra, and it now holds in this case, that the legislature has delegated to the Montana liquor control board the control of the licensing of retail liquor dealers in this state and that the respective towns and

cities of the state have not been granted the power to divest the Montana liquor control board of that control nor to nullify nor render void and useless the state liquor licenses duly issued by such board.''

A somewhat different situation obtains as to the Montana Beer Act, Chapter 106, Laws of 1933, construed and interpreted by this court in State ex rel. McIntire v. City Council of City of Libby, 107 Mont. 216, 82 Pac. (2d) 587. In section 45 of the Montana Beer Act, now section 2815.44 Revised Codes of 1935, the legislature, after fixing the annual license fees to be paid to the state by those operating under the Act, provided: ''And provided further, that nothing in this act contained shall in any manner be so construed as to prohibit or prevent cities and incorporated towns from enacting ordinances for the enforcement of this act and to license and regulate places of business where beer is sold, notwithstanding the fact that the persons conducting such places have obtained a license from the board, the only restriction hereby imposed being that such regulatory license so imposed by any city or town shall be reasonable and not in excess of the amount imposed by the state.''

By virtue of the quoted provisions of section 45 of Chapter 106, Laws of 1933, section 2815.44, Revised Codes of 1935, the legislature has expressly granted to the cities and towns of this state the power to license places of business, within their limits, where beer is sold subject, of course, to the requirements that the ordinances providing therefor be not ''Inconsistent with the laws of the United States or the state'' (sec. 4958, Rev. Codes of 1935) ; that they be reasonable and not in excess of the amount imposed by the state (Sec. 45, Chapt. 106, Laws of 1933) and that they do not have the effect of inhibiting the issuance of a license by the state liquor control board nor of nullifying the license issued by the board. State ex rel. Wiley v. District Court, supra.

The scope, extent and wisdom of the provisions incorporated in the State Liquor Control Act (Chapt. 105, Laws of 1933) and in the Montana Beer Act. (Chapt. 106, Laws of

1933) were and are for the determination of the legislative department of government which has expressly provided that, "In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and when there are several provisions * * * such a construction is, if possible, to be adopted as will give effect to all." Sec. 10519, Rev. Codes of 1935.

"The right of the state in the exercise of its police power to ██ ██ either prohibit entirely the sale of intoxicating liquors or regulate the sale thereof is thoroughly established. The manner and extent of the regulation, if there be regulation, rests in the legislative judgment of the state and is a matter of legislative policy." State v. Andre, 101 Mont. 366, 371, 54 Pac. (2d) 566, 568. "Subject to such restrictions as the state Constitution may prescribe, it is a matter exclusively within the discretion of the state legislature to decide the form of liquor control, * * * and having decided, it may adopt such measures as are reasonably appropriate or needful to render such control effective. * * * The scope and extent of such regulations depend solely upon the judgment of the lawmakers, with the wisdom of which the judiciary has no concern, provided, always, that they do not transcend the limits of state authority by invading rights which are secured by the Constitution of the United States, and provided further that the regulations adopted do not operate a discrimination against the rights of residents or citizens of other states." 30 Am. Jur., Intoxicating Liquor, p. 271, sec. 29.

It is quite evident that the city council intended city Ordinances Nos. 845 and 931 relating to retail *beer licenses* as companion measures to the Montana Beer Act, Chapter 106, Laws of 1933, while city Ordinances Nos. 846 and 932 relating to retail *liquor licenses* were intended as companion measures to the State Liquor Control Act of Montana, Chapter 105, Laws of 1933.

This court has held that, within the limits hereinbefore stated,

the city is empowered to limit or restrict, by ordinance, the number of places where beer may be sold within the city (State ex rel. McIntire v. City Council of City of Libby, supra) but that under the present law the city is not empowered to limit or restrict by ordinance, the number of retail liquor licenses that may be issued to retail liquor dealers operating within the city. State ex rel. Wiley v. District Court, supra.

Chapter 167, Session Laws of 1907, providing for the initiative and referendum for cities and towns provides that no ordinance of the character of Ordinances Nos. 931 and 932 "shall become effective until thirty days after its passage." Sec. 3, Chapt. 167, Session Laws of 1907; sec. 5060, Rev. Codes of 1935. During such thirty days following the passage of such ordinance five per cent. of the qualified electors of the city may by petition addressed to the council and filed with the city clerk demand that such ordinances or any part or parts thereof shall be submitted to the electors of the city. Sec. 4, Chapt. 167, Session Laws of 1907; sec. 5061, Rev. Codes of 1935. "A measure accepted by the electors shall take effect five days after the vote is officially announced" (sec. 8, Chapt. 167, Session Laws of 1907; sec. 5065, Rev. Codes of 1935) and of course it goes without saying that a measure rejected by the electors shall not take effect at all. Again, the express mention of one thing implies the exclusion of another. Expressio unius est exclusio alterius.

The filing with the city clerk, within the thirty days following the passage of the ordinance, of the petition signed by five per cent. of the qualified electors of the city (sec. 5061, Rev. Codes) suspends the operation of the ordinance (sec. 5062, Rev. Codes) and warrants submission to the electors "at the next municipal election," while if the petition be signed by not less than fifteen per cent. of the qualified electors then "The measure shall be submitted at a special election to be held for the purpose." Sec. 5062, Rev. Codes of 1935.

The petition herein, having been signed by over five per cent. of the qualified electors of Great Falls and having been

filed with the city clerk in time, effected a suspension of Ordinance No. 931 repealing existing restrictions on the number of retail *beer licenses* to be issued until such time as the referred measure is voted upon and accepted by the electors as provided for in section 5065, Revised Codes.

The complaint states a cause of action.

Accordingly, the judgment is reversed with directions to vacate the order sustaining the demurrers to the compalint and the cause is remanded to the district court for further proceedings in conformity herewith.

Mr. Chief Justice Lindquist and Associate Justice Cheadle concur.

Mr. Justice Angstman (specially concurring in part and dissenting in part).

I concur in the result stated in the foregoing opinion but I think the discussion of the relative powers of city and state in fixing the number of beer and liquor licensees within a given city is not neeessary to the decision of the legal point involved. I therefore express no opinion of the state of the law on that subject further than what I stated in my dissenting opinion on the petition for rehearing in the case of State ex rel. Wiley v. District Court, Mont., 164 Pac. (2d) 358, commencing on page 363, which the majority of the court assumed to suggest that I was permitted to file only through their grace.

In that case I took the view that the case of State ex rel. McIntire v. City Council of City of Libby, 107 Mont. 216, 82 Pac. (2d), 587 squarely held that the city may limit the number of licenses issued within the city and that "the statutory law is exactly the same today as it was when the Libby case was decided" and hence that the city still has that right.

It seems to me too that this power is but a paper right if it can be frustrated by action of the state board in issuing liquor licenses as it pleases.

Let it be noted that under section 9 of Chapter 84, Laws of 1937, it is provided that, "no person, club, or fraternal organization shall be entitled to a license under this act unless

such person, club, or fraternal organization shall have a beer · license issued under the laws of Montana.''

Either the city may or it may not limit and restrict the number of beer licensees in the city. If it has the power to do so then it may do so without restriction or limitation. If its right is subject to restrictions or limitations imposed by the state board or someone else, then the right does not exist in the city but reposes elsewhere. I think it rests in the city as held in the Libby case.

I see no purpose in treating of this question in this case since the only point before us is what effect does the petition for referendum have upon ordinances 931 and 932.

I concur in the result reached on that point as to ordinance No. 931 but I think the same result applies to ordinance No. 932.

Mr. Justice Morris concurs in the foregoing views of Mr. Justice Angstman.