STATE ex rel. McCARTEN, Appellant, v. HARRIS
ET AL., Respondents.

(No. 8,228.)

(Submitted June 30, 1941.   Decided July 10, 1941.)

[115 Pac. (2d) 292.)

346

*Mr. C. T. Sanders,* for Appellant, submitted a brief and argued the cause orally.

*Mr. John W. Bonner,* Attorney General, *Mr. Clarence Hanley,* Assistant Attorney General, and *Mr. John E. Erickson,* for Respondents, submitted a brief; *Mr. Hanley* and *Mr. Erickson* argued the cause orally.

*Messrs. Booth & Booth, Amici Curiae,* submitted a brief; *Mr. Edwin S. Booth, Sr.,* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Petitioner appeals from a judgment entered after an order sustaining defendants' motion to quash his petition for a writ of mandate. The sole question is the sufficiency of the petition to state a cause of action for the relief sought.

It is not necessary to set forth the petition in full. It recites that the defendants constitute the Montana Liquor Control Board and that the petitioner filed his application for a retail liquor license and tendered the statutory fee on March 19, 1941; sets forth as an exhibit a copy of the application filed by him with the defendants; expressly alleges petitioner's possession of the various qualifications required of applicants by Chapter 84 of the Laws of 1937, and expressly negatives the various dis-

qualifications imposed on persons and premises by the Act; recites that his premises conform to all the provisions of law and the rules and regulations of the board; recites that the defendants set a time for the consideration of his application and afforded him an opportunity to state his qualifications and those of his premises for such retail liquor license, but on the same day refused without legal cause to grant him the license; that defendants' action "was based on the sole ground and for the sole reason that the said Defendant Board determined not to grant such application for a license to sell liquor at retail, to your petitioner at his premises aforesaid, because said Defendant Board believed and was of the opinion that a majority of the inhabitants of Sidney and vicinity, were opposed thereto."

It is agreed that the chief question is the amount of discretion reposed in the board by the Act. The preamble declares it the policy of the state to grant licenses to persons "qualified under this Act" to sell liquor at retail posted price "in accordance with this Act and under rules and regulations promulgated by the said board." Section 3 provides that the board "is hereby empowered, authorized and *directed* to issue licenses to qualified applicants as herein provided." Section 6 provides that within thirty days after the filing of the application the board shall cause a thorough investigation to be made and "shall determine whether such applicant is qualified to receive a license and his premises are suitable for the carrying on of the business, and whether the requirements of this Act and the rules and regulations promulgated by the board are met and complied with." Section 8 provides among other things that "all licenses are applicable only to the premises in respect to which they are issued." Subdivision 5 of section 10 provides that no license shall be issued to "a person who is not qualified or whose premises do not conform to the provisions of this Act, or with the rules and regulations promulgated by the board." Section 13 expressly disqualifies certain premises within six hundred feet of places of worship and schools not commercially operated. Section 22 requires the board to "make, promulgate and *publish*" such rules and regulations as it may deem necessary in

the administration of the Act, except as limited or prohibited by law; and that they "shall have the force of statute."

It is significant that among these rules and regulations required to be made, promulgated and *published* are those prescribing "the proof to be furnished and the conditions to be observed in the issuance of licenses," "the conditions and qualifications necessary to obtain a license," and "specifying and describing the place and manner in which the liquor may be lawfully kept or stored," and "covering the conduct, management and equipment of premises licensed to sell liquor," etc. It seems clear that the suitability of the premises is contemplated within these provisions and that it is the legislative intent to require that it be controlled by rule and not by caprice, whim, or reason of the kind admitted by the motion to quash.

As stated by this court in *McCarten* v. *Sanderson,* 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229, section 3 makes mandatory the issuance of licenses "to qualified applicants as herein provided." While not strictly in issue in that case, in which the question was the duty of the board of county commissioners to approve applications under Chapter 221, Laws of 1939 (since repealed by Chapter 163, Laws of 1941), it became necessary in the opinion to contrast the statutory provision *directing* the state board to issue licenses to qualified applicants and the provision requiring the applicant to first procure the county board's approval, but not *directing* the board to give its approval to qualified applicants. As we pointed out in that opinion, the fact that the limited local option feature of the 1937 Act for the licensing of retail liquor stores had expired might well explain the greater degree of discretion intrusted by the legislature to the local authorities than to the state board, in not directing them to approve the applications of qualified applicants. At any rate, the distinction was essential to the opinion and the legislature's subsequent action in repealing the prerequisite that the county commissioners' approval be obtained, but not changing in any particular the sections relating to the state board, is significant. Where, after a statute has been interpreted, the legislature makes radical changes in

phraseology an intention is thereby shown to establish a rule different from that announced by the court. (*Edwards* v. *County of Lewis and Clark*, 53 Mont. 359, 165 Pac. 297.) Conversely its failure to change another part of the statute construed must logically be taken as an intention to retain to that extent the rule announced by the court.

It is of course true that all parts of the Act must be considered with section 3; and, as appellant necessarily concedes, that section is limited by subdivision 5 of section 10 which provides that no license shall be issued to a person whose premises do not conform to the provisions of the Act or to the board's rules and regulations made thereunder. Since the licenses are not transferable and are "applicable only to the premises in respect to which they are issued" (section 8), it is clear that the possession of suitable premises is a qualification which the applicant must possess in order to be entitled to a license. That is obviously why section 6 requires the board to make a thorough investigation to determine, among other things, whether the premises are suitable and all requirements of the statute and of the rules and regulations complied with. The board's discretion necessarily extends to the determination of all those qualifications, and if in the due exercise of its discretion the board finds that they exist, it is directed by the Act to issue the license and has no discretion to refuse it for extraneous reasons.

The defendants admit that the personal qualifications of the applicant are not in question, but contend that it must be presumed that upon investigation the board found the applicant's premises not suitable. However, it is alleged in the complaint, and for present purposes admitted by the motion to quash, that the board's sole reason for refusal of the license was that it "believed and was of the opinion that a majority of the inhabitants of Sidney and vicinity were opposed thereto." We cannot therefore indulge the presumption that the board had an additional reason, or that the additional reason was the unsuitability of the petitioner's premises.

They next contend that a finding that a majority of the inhabitants were opposed to the license is equivalent to a find-

ing by the board that the premises were unsuitable. We are entirely unable to follow this reasoning, for obviously there might be any number of reasons other than the unsuitability of the premises upon which such majority objection might be based, including the general objection which might formerly have been expressed at a local option election; and even if we could find from that statement that the local majority opposed the license for that reason we can still not find that the board had the same reason, for it has no statutory authority to delegate its discretionary power to a local majority or to any other agency.

The board next contends that the petition is insufficient in ▮▮ alleging that the premises "conform to all provisions of law and rules and regulations" of the board without stating also that they are "suitable for the carrying on of the business." (Section 6 of the Act.) The contention is that even aside from the statute and the rules and regulations the board has the discretion to find that the premises are not suitable. However, under subdivision 5 of section 10, an applicant is disqualified for the license only if his premises do not conform to the provisions of law and of the rules and regulations, and there is no provision in the Act disqualifying either him or his premises because without reference to the Act or its rules or regulations thereunder, the board may find the premises unsuitable.

It must, therefore, be held that the allegation of conformity of the premises with all requirements of statute, rules and regulations is for present purposes a sufficient statement of the suitability of the premises.

Naturally, it may not be possible for the board to define the term "suitable" absolutely in its rules and regulations and there must be some discretion to be exercised by it in arriving at a decision with reference to each particular application. But obviously under the Act the general rules and regulations must be laid down by the board so that its action in each instance will be free from any imputation of caprice, whim or arbitrary conduct.

It may be unfortunate that the legislature has seen fit to remove all measure of local control, but its reason for repealing the requirement that local authorities' approval be obtained may well have been for the sole purpose of preventing arbitrary action. Certainly in enacting the repeal statute it made no provision for intrusting to the defendant board the arbitrary power thus taken away from the local authorities.

We might say in passing that while local option provisions are common we have been able to find no similar or comparable Act by which the licensing authority is authorized to conduct a plebiscite or local option election, informal or otherwise, with reference to individual applications. Certainly the legislature has not done so in this instance, and if it were to do so our traditional principles of jurisprudence would require established rules and regulations to insure uniformity of procedure, and especially to define the territory the residents of which are to express their preferences. Otherwise the board might in various instances consider the preference of the people of the county, of the city, the land township, the section of land, several miles or so each way on a road, or any other territorial tract, without in any one situation being open to the complaint of obvious abuse of discretion. By so doing it could arrive at a desired arbitrary result in each individual instance, thus denying the equal protection of the law. Certainly nothing appears in the statutes or in the pleadings of this case to define what is meant by the ''vicinity,'' the inhabitants of which are believed to be opposed to the petitioner's application, and it might be possible to consider an entirely different territorial boundary upon the next application for a license for the same premises by the same or another applicant. In the light of the features of the Act commented on above, and of the local option statutes, we cannot find a legislative intent to make possible such a result. The local option provision of the general liquor control action, sections 2815.96 to 2815.103, and the local option provisions of the Beer Act, sections 2815.53 to 2815.59, are in point, the latter being applicable because section 9 of the Act makes the possession of a beer license a prerequisite to a license under this

Act. These statutes are quite specific in setting forth the uniform procedure to be followed and of course relate to the entire territory and not to particular applications for licenses therein.

The petition stating a cause of action for the relief sought, it follows that the motion to quash should have been denied. If in fact the board has found that the petitioner or his premises are not qualified under the statute and the rules and regulations of the board for the license sought, that is a matter to be pleaded and proven by it.

The judgment is therefore reversed and the district court directed to set aside the order granting the motion to quash and the judgment entered thereon, and to make an order denying the motion and granting the defendants time in which to plead further.

ASSOCIATE JUSTICES ANGSTMAN, ANDERSON, MORRIS and HONORABLE A. J. HORSKY, District Judge, sitting in place of MR. JUSTICE ERICKSON, disqualified, concur.