McFATRIDGE ET AL., RELATORS, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 8,282.)

(Submitted December 22, 1941. Decided January 26, 1942.)

[122 Pac. (2d) 834.]

.82

*Mr. John W. Bonner,* Attorney General, *Mr. Clarence Hanley,* Assistant Attorney General, and *Mr. T. H. MacDonald,* Counsel for the Montana Liquor Control Board, for Relators, submitted an original and a supplemental brief; *Mr. Hanley and Mr. MacDonald* argued the cause orally.

*Honorable Frank P. Leiper,* District Judge, appearing *pro se* and in behalf of respondent district court, submitted a memorandum and addressed the court in support of respondent's motion to quash the alternative writ issued.

*Mr. C. T. Sanders,* appearing by special permission of the court in behalf of Sherman McCarten, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is a proceeding instituted by the State Liquor Control Board, asking that this court, under its supervisory control power, assume jurisdiction over a mandamus proceeding in the district court of Richland county, wherein a judgment has been entered requiring the board to issue a retail liquor license, and to annul the judgment so entered. An alternative writ was issued on the petition of the relators, directed to the district judge, requiring him to annul the judgment complained of or show cause why it should not be done. The district court in response thereto filed a motion to quash and also made return and answer to the writ.

A transcript of the testimony heard and proceedings had in

.the trial court was filed in respondent's return to the alternative writ. The Honorable Frank P. Leiper, the respondent district judge, appeared and personally argued the motion to quash. The Attorney General and counsel for the liquor control board, and counsel for McCarten, the license applicant, appeared and argued the cause as presented by the motion to quash, as well as the case on the merits. The cause was submitted on the motion to quash and also on the merits.

The present proceeding is the latest episode in protracted litigation concerning the liquor license application herein involved. The case has twice heretofore been before this court on questions of procedure and the functions and powers of the liquor control board (McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229; State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292), and has reached the point where final judgment has been entered by the district court after trial on the merits. By such judgment the liquor control board is commanded to issue the license applied for.

The board, in the present proceeding, complains of the judgment entered as being an incorrect conclusion upon the facts and the law; that it does injustice and is detrimental and injurious to public interest, from which there is no adequate relief by appeal, and has created an emergency that justifies the exercise by this court of the extraordinary power sought to be invoked.

The supervisory control which this court has over the course of litigation in the lower tribunals is not to be lightly exercised. That perception of its function is inherent in our judicial system. The guarded use of the power has been the rule, as is seen from the decisions of this court in the many cases heretofore arising wherein the exercise of the power has been sought. (State ex rel. Larsen v. District Court, 78 Mont. 435, 354 Pac. 414, and earlier cases therein cited.) While the power should not be lightly exercised, neither should it be lightly denied. The refusal to exercise the power should come only after careful consideration of the case presented. The propriety of

its exercise must, of necessity, rest in the sound discretion and judgment of this court.

Here, the petition attempts to set forth facts showing an emergency, but whether they are sufficient in law we need not now determine. On the facts recited in the petition, the writ must be denied because the district court was right, as we shall hereafter show; hence we need not discuss the question whether the writ would have been proper had the petition shown error on the part of the district court.

In considering the case here on the motion to quash, the question is whether the relators' petition states facts sufficient to warrant the issuance of the writ.

The petition sets forth in detail the proceedings in the court below, with copies of all pleadings and orders made and the final judgment rendered by the court, and with fact allegations in the petition, so that the facts upon which the judgment is based and all the proceedings leading up to the entry of judgment are well and fully presented by the petition. Upon these facts and proceedings as shown by the relators' petition, we can find no error in the rendition and entry of the judgment complained of.

The proceeding in the district court in which the judgment complained of was entered was brought by McCarten by petition for a writ of mandate to compel the State Liquor Control Board to issue to him a retail liquor dealer's license. The application had been denied by the board because it believed that the place where he proposed to conduct his business was not a proper place for a saloon. The position taken by the board is set out in its answer in the mandamus proceeding as follows:

"That after a full and complete investigation and hearing on the matters presented before said Board and at the conclusion thereof, said Board deliberated and after a full consideration of all the matters and things then before it and acting within its authority as such Board and in accordance with the provisions and statutes in such case made and provided and not otherwise, these defendants, as such Board, found the facts to be as follows, to-wit:

"(a) That petitioner was and is operating a dance hall in connection with the premises in question and that minors of the community congregate there and that the sale of intoxicating liquor on the premises in question will make such liquor readily available to such minors even though not sold to them directly and that the said premises are outside the limits of any incorporated city or town and that, by the issuance of a license, said premises would be likely to become a nuisance.

"(b) That said Triangle" [applicant's premises] "is located in an agricultural community and in an irrigated section of Richland County and is surrounded by large numbers of foreigners working in the fields in the immediate neighborhood and that such foreigners are largely composed of Mexicans who are, by their racial characteristics, particularly susceptible to the influence of intoxicating liquor and become noisy, turbulent, and troublesome and that while under the influence of intoxicating liquor frequent knifings and other like assaults occur to an unusually high degree on account of such susceptibility to the influence of intoxicating liquor and that while under the influence of such liquor such persons become a menace to traffic on the highway and a menace to the peace, quiet and safety of such neighborhood.

"(c) That the needs of those desiring intoxicating liquor and residing in the neighborhood can be reasonably met at the State Liquor Store in the City of Sidney; that the sentiment of the residents adjacent to the premises in question is strongly opposed to the issuance of such license and that the issuance of a license for such location would make the homes of those residing in the neighborhood less valuable and less desirable to the residents of such neighborhood and that the place in question would be an offense to the senses and to the sense of decency and propriety of those residing in the neighborhood.

"That on the facts so found defendants concluded that the premises were not suitable and that the protection of the peace, safety, quiet and moral welfare of the people residing in the neighborhood required the denial of petitioner's request for a

license and that for each and all of the foregoing reasons in this paragraph contained, petitioner's request was denied.''

The board in its petition admits and states that the license application presented was in proper form and showed the applicant to be qualified, and that the building and rooms in which he proposed to carry on the business met all the requirements of the law and the rules and regulations of the board as suitable quarters. The license, the board says, was denied solely because upon investigation and from reports made to it by a large number of citizens resident in the nearby town of Sidney, as well as in the immediate vicinity, it believed it improper and inadvisable to permit the sale of liquor in the particular location or in any place in the locality that would be served under the license applied for. In this, it says, it acted under the provisions of the liquor license law and in the exercise of discretion vested in it in the matter of the granting of retail liquor licenses.

It was the applicant's contention that upon a showing that he was qualified to engage in the business and had suitable premises wherein to carry on the business and met all the requirements of the law and the rules and regulations of the board in those respects, he was entitled to a license as a matter of right under the law, and that the board has no discretionary power to refuse it. The district court took the view contended for by the applicant and found that he was entitled to a license and commanded the board to issue the license forthwith. The court was right.

In this state all liquor to be sold as a beverage is handled by the state and is sold at state liquor stores operated under the management of the State Liquor Control Board, and by private vendors licensed by the board to sell at retail liquor purchased from the state liquor stores. The licensing of private vendors is provided for by Chapter 84 of the Laws of 1937. Section 3 of the Act provides that ''The Montana Liquor Control Board is hereby empowered, authorized and directed to issue licenses to qualified applicants as herein provided * * *.'' The only provision as to conditions under which such licenses shall be

granted is found in section 5, which requires that application for the license shall be made to the board "containing such information and statements relative to the applicant and the premises where the liquor is to be sold, as may be required by the Montana Liquor Control Board;" and in section 6, which provides that "upon receipt of an application for a license under this Act, accompanied by the necessary license fee and bond, the board shall within thirty (30) days thereafter, cause to be made a thorough investigation of all matters pertaining thereto, and shall determine whether such applicant is qualified to receive a license and his premises are suitable for the carrying on of the business, and whether the requirements of this Act and the rules and regulations promulgated by the board are met and complied with." This language is plain, clear and easily understood. There is no need of judicial construction to determine the legislative intent. The board is required to consider the application and to make a thorough investigation and determine "whether such *applicant is qualified to receive a license and his premises are suitable for the carrying on of the business.*" It is clear that in speaking of the premises where the liquor is to be sold this refers to the building and the quarters in which the applicant proposes to carry on his business, and that the matter for the board to determine with respect to the premises is that they are suitable for such business. Aside from prescribed distance from churches and schools, there is no restriction in the law as to location. No mention is made of the locality wherein the applicant's premises are located, nor is any provision made for consideration of the attitude of residents of the vicinity toward the granting of the license.

The board has undertaken to supplement the law by rules and regulations of its own adoption, vesting in itself the discretionary power it has attempted to exercise. This, of course, it cannot do. The board is an administrative body, functioning as a bureau of the executive department of the state government. It has no lawmaking power. Any attempt to create for itself authority and discretion not given by the legislature must fail.

The board is authorized to make rules and regulations, but these must be limited in their purpose and effect as aid in the administration of the law. This is very clearly expressed in section 22 of the Act, which says that "for the purpose of the administration of this Act the board shall make, promulgate and publish such rules and regulations as the said board may deem necessary for carrying out the provisions of this Act and for the orderly and efficient administration hereof." It is further provided that "except as may be limited or prohibited by law and the provisions of this Act, such rules and regulations so made and promulgated shall have the force of statute." The last quoted language can mean no more than that the rules and regulations adopted shall be binding and enforceable in all matters to which they pertain and with statewide application, the same as if prescribed by statute. The power to enact statute law was not, and could not, be delegated to the board. The provisions in the regulations adopted by the board by which the discretionary power here in question is assumed and created for itself by the board, are all void and of no effect. All these articles of regulations undertake to widen the scope of the law and extend the powers of the board to matters beyond the purview of the legislative enactment.

The relators, in support of their contention that the interests, welfare and wishes of the community are matters properly to be considered in acting on an application for a license, have cited cases dealing with the use of one's premises for purposes resulting in damage and injury to neighboring property and discomfort and annoyance to residents of the neighborhood. The two cases of *Evans* v. *Reading Chemical Fertilizing Co.*, 160 Pa. 209, 28 Atl. 702, and *Wellington* v. *Crowley*, 230 Mass. 107, 119 N. E. 744, are strongly urged as authority for their position. Each of these cases deals with the use of premises for factory operation which, because of odors, dust and noise spreading therefrom over the surrounding neighborhood, a populous residential section, constituted a nuisance which might be restrained by court injunction. As we have already pointed

out, the effect upon a community of the sale of liquor at a place there licensed, and the attitude of the residents of the community as opposed thereto, are matters which the law has not specified for consideration by the board in the granting of a license. The question determined in cases such as the two above referred to is not involved in the case before us.

The case of *Perry* v. *City Council*, 7 Utah 143, 25 Pac. 739, 998, 11 L. R. A. 446, cited by relators, deals with the exercise of discretion by a city council in the granting of liquor licenses where the power to license, regulate and tax the sale of intoxicating liquors had been delegated to the city council, the local legislative body. The State Liquor Control Board, as has already been pointed out, is an administrative body and functions in an entirely different capacity from that of a city council. The case is not in point.

The case of *Parente* v. *State Board of Equalization*, 1 Cal. App. (2d) 238, 36 Pac (2d) 437, arose under the Liquor Control Act adopted in that state at the time of the repeal of the Eighteenth Amendment and deals with the question here involved. Under the California law, however, the board was required to consider protests against the granting of a license, and in that respect it differs from our law. The interests, welfare and attitude of the residents of the community were to be taken into consideration, wihch required the exercise of discretion, and that possibly influenced the court in giving to the word "premises" the larger meaning as encompassing the thought of locality. However, we do not believe that the word "premises" itself can ever be properly expressive as referring to a locality, and the meaning of the word as given in that case, we think is expanded beyond anything found in lexicology or in general use, and it is not warranted by anything in the context of our statute.

Nor do we think that the qualifying word "suitable" changes or enlarges the meaning beyond that as commonly meant and understood in speaking of "premises." "Suitable" has reference to the use and purpose of the thing spoken of. The

use and purpose referred to is understood from the thing itself or is expressly stated. In this instance it is expressly stated in the phrase in which the two words appear. The premises must be "suitable *for the carrying on of the business.*" The question of suitability is limited to the consideration of the fitness of the premises for the business which the state licenses to be there conducted.

The State Liquor Control Board was wrong in denying the license applied for, and the district court was right in requiring that it be issued.

As already stated, all of these fact matters and controversial questions are set out in the relators' petition and must be considered in determining whether the petition states facts sufficient to warrant the issuance of the writ applied for. Our view is that the facts alleged are not sufficient. They do not show that any error has been committed by the trial court; therefore, there is no cause for any complaint; there is nothing to correct and there is no occasion for the issuance of a writ of any kind.

Upon the disposition of the case on the ground hereby determined, there is no further question remaining as material which need be considered.

The motion to quash the alternative writ is granted and the proceeding dismissed.

MR. CHIEF JUSTICE JOHNSON, ASSOCIATE JUSTICES ANGSTMAN and MORRIS, and HONORABLE W. C. HUSBAND, District Judge, sitting in place of MR. JUSTICE ERICKSON, disqualified, concur.

Rehearing denied March 13, 1942.