STATE ex rel. McCARTEN, Respondent, v. CORWIN et al Appellants.

No. 8694

Submitted January 14, 1947. Decided February 13, 1947.

177 Pac. (2d) 189

522

Mr. Paul W. Smith, Mr. David R. Smith and Mr. J. Miller Smith, all of Helena, for appellants.

Mr. C. T. Sanders, of Sidney, for respondent.

MR. CHIEF JUSTICE ADAIR delivered the opinion of the Court.

Sherman McCarten had a lease upon the premises known as No. 101 Central Avenue North, in the business district of Sidney, Montana, wherein he conducted a general cafe and restaurant business.

On January 30, 1946, he made written application in proper form to the Montana Liquor Control Board for licenses to sell beer and liquor at retail at the aforesaid premises. The applications showed the applicant to be qualified and that the building and premises wherein he proposed to carry on his business met all the requirements of the law as to suitable quarters. Cashier's checks in the proper amounts and payable to the board accompanied the applications.

The board denied the applications, whereupon McCarten brought mandamus proceedings in the district Court of Richland county seeking a writ requiring the Montana Liquor Control Board to issue the licenses for which he had applied.

The petition for the writ alleges that the board had denied McCarten's application because it had been advised by the city of Sidney, through its city attorney, that the issuance of additional licenses would create an additional police problem in said city.

The board, in its answer, admits that it had notified McCarten that his applications for licenses were rejected because the board had been advised by the city of Sidney that the issuance of additional licenses in Sidney would create therein an additional police problem and alleged the existence of certain ordinances of the city limiting to five the number of retail beer and liquor licenses to be issued in said city and alleging that such maximum number of licenses had been issued. The board's answer also alleges "that under the present conditions the City of Sidney cannot police more than five bars and that the licensing of more than five bars in said city would create additional police problems with which the City of Sidney cannot cope with; that the granting of a beer license and a liquor license to the petitioner, Sherman McCarten would cause the number of licenses in the City of Sidney to exceed the said number of five; that the City of Sidney does not have sufficient funds in its police department to employ more policemen; that the issuing of said licenses to the petitioner, Sherman McCarten would cause an undue hardship upon the City of Sidney which in the judgment of the Montana Liquor Control Board is unwarranted and unfair; that the Montana Liquor Control Board found that in its judgment the issuing of said licenses to Sherman McCarten would endanger the protection, welfare and safety of the people of City of Sidney and of the State of Montana; that because of the fact that the premises for which Sherman McCarten applied for licenses could not be properly policed said premises were not suitable for the purpose of establishing a business of selling beer and liquor."

A reply filed by McCarten placed in issue the affirmative matter of the answer and the cause proceeded to trial before the court without a jury.

At the trial the applicant, McCarten, testified that for approximately eight years, under licenses theretofore issued to him by the board, he had operated "The Triangle" tavern located about three miles south of Sidney; that during such time he personally conducted the business and attended to policing thereof without calling upon the local authorities to supply any officers or deputies on the premises; that he found he had been able to police his own business in the past and that, should the licenses be issued, he proposed to conduct and police his new business in like manner. This evidence is uncontradicted.

After hearing and considering the evidence the court made written findings of fact and conclusions of law and, in accordance therewith, rendered judgment for McCarten ordering the issuance of a peremptory writ directing the Montana Liquor Control Board to grant McCarten a license to sell beer and a license to sell liquor, both at retail, at the premises designated as 101 Central Avenue North in Sidney and awarding him damages of $1,200 and costs. From such judgment the Montana Liquor Control Board has appealed.

The appellant board's first specification of error is that the trial court erred in making its finding of fact XV which recites: "That the defendant board denied the applications of the relator herein for a license to sell beer at retail and a license to sell liquor at retail by reason of findings numbered X, XI, and because advised that the mayor and city council of Sidney did not desire further licenses issued for the sale at retail of beer and liquor in the City of Sidney."

Appellant raises no question as to the correctness of any of the trial court's findings of fact other than finding XV, supra.

The district court's findings of fact X and XI referred to in finding XV, supra, recite:

"X. That the City of Sidney, Montana, has two ordinances relating to the licensing and regulation of the business of selling beer and liquor at retail, one of said ordinances providing that the number of beer licenses to be issued by the City of Sidney

to retailers shall not, in any one year, exceed five until such time as the population within the said city shall exceed five thousand persons; that the other ordinance provides that the number of liquor licenses issued by the City of Sidney to retailers shall not, in any one year, exceed five until such time as the population within the said city shall exceed five thousand persons.

"XI. That at the time the applications for licenses were filed the City of Sidney had already isued five licenses for the sale of beer at retail and five licenses for the sale of liquor at retail within the corporate limits of the City of Sidney, Montana."

On appeal to this court the presumption is that the findings and the judgment based thereon are correct and such findings must be sustained if they are supported by substantial evidence. State ex rel. Anderson v. Gile, ............ Montana, ............ 172 Pac. (2d) 583.

At the trial before the district court the appellant board introduced in evidence certified copies of ordinances Nos. 131, 134 and 135 of the city of Sidney, which purport to limit to five the number of retail beer and retail liquor licenses to be issued in said city, together with evidence that at the time Mc-Carten made his applications the city had already issued five such licenses for places operating within the corporate limits of said city.

The appellant board also introduced in evidence in the district court a letter received by it from the city attorney of Sidney dated November 29, 1945, directing the board's attention to the city ordinances limiting the number of bars for which licenses will be granted to five and stating further that, "The Mayor and City Council have asked me to advise you of the fact that they are very anxious that, as a proper police regulation in Sidney, at least under present conditions and present population, no further licenses shall be granted in this community by the State Board."

About six weeks before the foregoing letter was written, to-

wit, on October 16, 1945, this court pronounced its decision in the case of State ex rel. Wiley v. District Court, No. 8615, 118 Mont. 50, 164 Pac. (2d) 358, holding that, by the enactment of Chapter 163, Laws of 1941, the 1941 legislative assembly had effected a change in the public policy of this state by depriving the local authorities including the licensing authorities of incorporated cities and towns, of the measure of local control which had been granted them by the enactment of Chapter 221, Laws of 1939, and that under the 1941 Act the holder of a retail liquor license issued by the Montana Liquor Control Board was entitled to engage in business and operate under such license without interference by the local city authorities subject only to the payment by him of such fee as may be lawfully exacted by the city pursuant to the existing statute.

A second letter from the city attorney of Sidney, dated January 28, 1946, and addressed to J. A. Buley, administrator of the board, was introduced in evidence in the district court by the appellant board. The letter reads:

"Dear Mr. Buley:

"Your letter of January 25 at hand and its contents carefully noted, and particularly in reference to the application of Mr. Sherman McCartén for a liquor license. I am enclosing herewith a copy of Ordinance No. 131 of the City of Sidney, Montana, concerning the licensing of or sale of retail liquor in Sidney, and you will note that liquor licenses are limited at the present time to five under our ordinance. Until such time as the population exceeds 5,000 it is not proposed to license any more, such an enumeration to be as a result of official census to be taken.

"This licensing ordinance was passed, of course, in the belief by the City Council of the City of Sidney, that they had a proper right to pass such a legal licensing law, under the Statutes of Montana.

"We appreciate the desire of your Board to cooperate in every way possible with the City of Sidney and it is the opinion of the Council that no more licenses can be issued without

creating an additional police problem, and it is felt that your Board should properly recognize the situation as it is and under which it would be impossible to grant the request made by Sherman McCarten or his wife for an additional liquor license in Sidney. A similar ordinance exists with reference to the limitation of beer licenses.''

In its answer the board specifically admits that it notified McCarten that his ''applications were rejected because the defendant, Montana Liquor Control Board, had been advised by the City of Sidney, through its attorney, Mr. Carl Brattin, that the issuance of additional licenses in Sidney would create an additional police problem, but deny that it was sole reason and ground.''

Concerning the board's action in denying McCarten's applications for licenses, administrator Buley testified:

''We relied not only upon our own investigator's report but the letter from the city attorney which states he was writing that letter at the request of the council, if my memory serves me correctly. The board discussed all factors entering into the case and the decision was as I informed Mr. Sanders. * * *

''I might say in every application an inspector does check on everything pertaining to the applicant, and his instructions are to check upon all regulations and to confer with city or county officials. He makes a written report which, in this case, was also done. We, of course, relied chiefly upon written information from city or county officials.''

The appellant board itself introduced the evidence which fully sustains the trial court's finding of fact XV and for the board to here assign error in the making of such finding is not only idle but frivolous as well.

On December 19, 1945, this court denied the petition for rehearing in the Wiley case, No. 8615, supra, but notwithstanding the pronouncements of this court therein, and within less than a month after the denial of the petition for rehearing, the Montana Liquor Control Board sought to effect a change in the declared public policy of this state as written in the laws en-

acted by the legislature, by promulgating the board's so-called Regulation No. 49, which assumes to declare *"the future policy of the Board * * * in* passing on applications for beer and/or liquor licenses.''

Regulation No. 49 so promulgated by the board reads:

''Whereas, for controlling the traffic in liquor the Board in its discretion deems it necessary to recognize ordinances enacted by the cities and towns under the police powers of the cities and towns for the licensing of premises where beer and liquor are to be sold in said cities and towns.

''Whereas, the Board recognizes the fact that the traffic in liquor in some instances causes some of the cities and towns and also the law enforcement officials in the counties to have greater police problems than they would otherwise have and

''Whereas, the Board also recognizes the fact that the councils and commissions in some of the cities and towns have found it necessary to enact ordinances under their police powers for either zoning the cities or towns where beer and/or liquor can or cannot be sold at retail or for limiting the number of places where beer and liquor may be sold at retail because of inadequate police forces and funds for the enlarging of their police forces, and

''Whereas, the Board recognizes the fact that in the counties and unincorporated towns the County Sheriffs may not have sufficient deputies to properly police establishments where liquor and beer are sold outside of the cities and incorporated towns,

''Now therefore, it is hereby declared that it is and shall be the future policy of the Board for the protection of the public that in passing on applications for beer and/or liquor licenses, the Board and Administrator shall take into consideration the following facts, to-wit:

''1. Whether or not licensing of additional establishments would create a police problem.

''2. Whether or not there is an ordinance either zoning the city or town or limiting the number of beer or liquor establish--

ments and whether or not it is necessary to limit the number of establishments to avoid creation of additional police problems.''

The legislature by legislative enactment created the Montana ▮ Liquor Control Board, which board exists and which may be abolished at the will and pleasure of the legislature.

''The board is an administrative body, functioning as a bureau of the executive department of the state government. It has no law-making power. Any attempt to create for itself authority and discretion not given by the legislature must fail. * * * The power to enact statute law was not, and could not, be delegated to the board. The provisions in the regulations adopted by the board by which the discretionary power here in question is assumed and created for itself by the board, are all void and of no effect. All these articles of regulations undertake to widen the scope of the law and extend the powers of the board to matters beyond the purview of the legislative enactment.'' McFatridge v. District Court, 113 Mont. 81, 88, 89, 122 Pac. (2d) 834, 838.

The ''public policy'' of the state is for the law-making power ▮ of the state to declare. The state has no ''public policy'' except that found in its Constitution and Laws, which are made by the law-making power and not by administrative officers acting solely on their own ideas of public policy in promulgating a rule or so-called ''regulation.'' Marburg v. Cole, 261 App. Div. 324, 26 N. Y. S. (2d) 77; Chelsea-Wheeler Coal Co. v. Marvin, 131 N. J. Eq. 76, 24 A. (2d) 403; Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co., 8 Cir., 70 F. 201, 17 C. C. A. 62, 30 L. R. A. 193.

The legislature of this state has specifically provided for the issuance to qualified applicants of licenses for the selling at suitable premises of beer and liquor at retail.

When the legislature has spoken upon a particular subject ▮ and within the limits of its constitutional powers, its utterance is the public policy of the state. Mieyr v. Federal Surety Co., 97 Mont. 503, 34 Pac. (2d) 982; State ex rel. Holt

v. District Court, 103 Mont. 438, 63 Pac. (2d) 1026; State v. Gateway Mortuaries, Inc., 87 Mont. 225, 287 Pac. 156, 68 A. L. R. 1512; Park Const. Co. v. Independent School Dist. No. 32, 209 Minn. 182, 296 N. W. 475, 135 A. L. R. 59. See also Picket Pub. Co. v. Board of Com'rs of Carbon County, 36 Mont. 188, 92 Pac. 524, 13 L. R. A., N. S., 1115, 122 Am. St. Rep. 352, 12 Ann. Cas. 986; Cruse v. Fischl, 55 Mont. 258, 175 Pac. 878.

In McFatridge v. District Court, supra, this court said:

"The licensing of private vendors is provided for by Chapter 84 of the Laws of 1937. Section 3 of the Act provides that 'The Montana liquor control board is hereby empowered, authorized and directed to issue licenses to qualified applicants as herein provided * * *.' The only provision as to conditions under which such licenses shall be granted is found in section 5, which requires that application for the license shall be made to the board 'containing such information and statements relative to the applicant and the premises where the liquor is to be sold, as may be required by the Montana liquor control board;' and in section 6, which provides that 'upon receipt of an application for a license under this act accompanied by the necessary license fee and bond, the board shall within thirty (30) days thereafter, cause to be made a thorough investigation of all matters pertaining thereto, and shall determine whether such applicant is qualified to receive a license and his premises are suitable for the carrying on of the business, and whether the requirements of this act and the rules and regulations promulgated by the board are met and complied with.' This language is plain, clear and easily understood. There is no need of judicial construction to determine the legislative intent. The board is required to consider the application and to make a thorough investigation and determine 'whether such *applicant is qualified to receive a license and his premises are suitable for the carrying on of the business.*' It is clear that in speaking of the premises where the liquor is to be sold this refers to the building and the quarters in which the applicant proposes to carry on his business, and that the matter for the board to de-

termine with respect to the premises is that they are suitable for such business. Aside from prescribed distance from churches and schools, there is no restriction in the law as to location. No mention is made of the locality wherein the applicant's premises are located, nor is any provision made for consideration of the attitude of residents of the vicinity toward the granting of the license.

"The board has undertaken to supplement the law by rules and regulations of its own adoption, vesting in itself the discretionary power it has attempted to exercise. This of course it cannot do. * * * As we have already pointed out, the effect upon a community of the sale of liquor at a place there licensed, and the attitude of the residents of the community as opposed thereto, are matters which the law has not specified for consideration by the board in granting of a license. * * * The State Liquor Control Board, as has already been pointed out, is an administrative body and functions in an entirely different capacity than does a city council.

"'* * * 'Suitable' has reference to the use and purpose of the thing spoken of. The use and purpose referred to is understood from the thing itself or is expressly stated. In this instance it is expressly stated in the phrase in which the two words appear. The premises must be 'suitable *for the carrying on of the business.*' The question of suitability is limited to the consideration of the fitness of the premises for the business which the state licenses to be there conducted.

"The State Liquor Control Board was wrong in denying the license applied for, and the district court was right in requiring that it be issued."

In State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292, 294, in construing Chapter 84, Laws of 1937, this court said:

"The preamble declares it the policy of the state to grant licenses to persons 'qualified under this act' to sell liquor at retail posted prices 'in accordance with this act and under rules and regulations promulgated by the said board.' Section

3 provides that the board 'is hereby empowered, authorized and *directed* to issue licenses to qualified applicants as herein provided.' Section 6 provides that within thirty days after the filing of the application the board shall cause a thorough investigation to be made and 'shall determine whether such applicant is qualified to receive a license and his premises are suitable for the carrying on of the business, and whether the requirements of this act and the rules and regulations promulgated by the board are met and complied with.' * * *

"It seems clear that the suitability of the premises is contemplated within these provisions and that it is the legislative intent to require that it be controlled by rule and not by caprice, whim or reason of the kind admitted by the motion to quash.

"As stated by this court in McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229, *section 3 makes mandatory the issuance of licenses 'to qualified applicants as herein provided.'* * * *

"Since the licenses are not transferable and are 'applicable only to the premises in respect to which they are issued' (section 8), it is clear that the possession of suitable premises is a qualification which the applicant must possess in order to be entitled to a license. That is obviously why section 6 requires the board to make a thorough investigation to determine, among other things whether the premises are suitable and all requirements of the statute and of the rules and regulations complied with. The board's discretion necessarily extends to the determination of all those qualifications, and if in the due exercise of its discretion the board finds that they exist, *it is directed by the Act to issue the license and has no discretion to refuse it for extraneous reasons.*

"The defendants admit that the personal qualifications of the applicant are not in question, but contend that it must be presumed that upon investigation the board found the applicant's premises not suitable. However, it is alleged in the complaint, and for present purposes admitted by the motion to quash, that the board's sole reason for refusal of the license was

that it 'believed and was of the opinion that a majority of the inhabitants of Sidney and vicinity were opposed thereto.' We cannot therefore indulge the presumption that the board had an additional reason, or that the additional reason was the unsuitability of the petitioner's premises. * * *

"It may be unfortunate that the legislature has seen fit to remove all measure of local control, but its reason for repealing the requirement that local authorities' approval be obtained may well have been for the sole purpose of preventing arbitrary action. Certainly in enacting the repeal statute it made no provision for intrusting to the defendant board the arbitrary power thus taken away from the local authorities.

"We might say in passing that while local option provisions are common *we have been able to find no similar or comparable Act by which the licensing authority is authorized to conduct a plebiscite or local option election, informal or otherwise, with reference to individual applications. Certainly the legislature has not done so in this instance, and if it were to do so our traditional principles of jurisprudence would require established rules and regulations to insure uniformity of procedure, and especially to define the territory the residents of which are to express their preferences.* Otherwise the board might in various instances consider the preference of the people of the county, of the city, * * * several miles or so each way on a road, or any other territorial tract, without in any one situation being open to the complaint of obvious abuse of discretion. By so doing it could arrive at a desired arbitrary result in each individual instance, thus denying the equal protection of the law. * * * In the light of the features of the Act, commented on above, and of the local option statutes, we cannot find a legislative intent to make possible such a result.'' (Emphasis ours.)

Clearly the provisions of Regulation No. 49 adopted by the board, by which it attempted to create for itself authority and discretion not given by the legislature, are void and of no effect. In McFatridge v. District Court, supra, this court held

534

that the board was not empowered, by rule or regulation, to create for itself authority and discretion.

The trial court made the following twelve conclusions of law, viz.:

"I. That the full, complete, and entire control of the liquor traffic within the state is placed in the Montana Liquor Control Board and cities and towns are without power or authority to interfere with that control. Session Laws of 1937, chapter 84; [State ex rel. McCarten] v. Harris, 112 Mont. 344, [115 Pac. (2d) 292]; McFatridge v. District Court, 113 Mont. 81, [122 Pac. (2d) 834].

"II. That the state liquor control board under chapter 84 of the Session Laws of 1937, as amended, are empowered, authorized, and *directed* to issue licenses to qualified applicants. Mc-Carten v. Sanderson, 111 Mont. 407 [109 Pac. (2d) 1108, 132 A. L. R. 1229].

"III. That the Montana Liquor Control Board is an administrative body functioning as a bureau of the executive department. Any attempt to create for itself authority or discretion not given by the legislature must fail. McFatridge v. District Court, supra.

"IV. That under the statute the issuance of liquor and beer licenses by the liquor control board are ministerial acts not involving discretion. McCarten v. Sanderson, supra.

"V. That regulation number 49 as amended, adopted by the defendant board, in so far as it affects this action, is an attempt to create for itself an authority and discretion not given by the legislature and is, therefore, void and of no effect. Mc-Fatridge v. District Court, supra.

"VI. That the attitude of the residents of a community as expressed by ordinance of a city are matters which the law has not specified for consideration by the board in granting a license. McFatridge v. District Court, supra.

"VII. That there is no statutory authority for the liquor control board to delegate any of its powers to any other agency. McFatridge v. District Court, supra.

"VIII. That the question of suitability is limited to the consideration of the fitness of the premises for the business which the state licenses to be there conducted, to-wit: Sale at retail of beer and liquor. McFatridge v. District Court, supra.

"IX. That the effect of the legislature [Laws 1941, c. 163, sec. 2] in eliminating that part of section 5 of chapter 221 of the laws of 1939 requiring approval of local authorities was to deprive local authorities of any measure of local control.

"X. That the petitioner herein was qualified to carry on the business of operating an establishment for the sale of beer and the sale of liquor at retail; that the petitioner had suitable premises in the City of Sidney, Montana, to carry on the said business; that the petitioner had met all requirements of the law and the rules and regulations of the defendant board and is entitled to a license to sell beer at retail and a license to sell liquor at retail as a matter of right.

"XI. That the petitioner has been damaged in the sum of one thousand two hundred dollars by reason of having to employ an attorney at law to bring and prosecute this proceeding.

"XI1. That the state liquor control board was wrong in denying the license applied for and the petitioner is entitled to have a judgment rendered and entered making the alternative writ heretofore issued permanent and to recover damages in the sum of one thousand two hundred dollars ($1,200), together with costs of suit herein incurred."

The appellant board assigns error in the making of the court's conclusions IV, V, VI, VIII, IX, X, XI and XII, contending that same are incorrect, but we find no merit in such contention.

The final assignment is that, "the trial court erred in entering its judgment for the reason that it is contrary to the law and evidence." The evidence discloses that the applicant possesses the required personal qualifications and that his premises are suitable for the carrying on of the business. The statute provides that the board is "empowered, authorized and

*directed* to issue licenses'' to such qualified applicant. Thus does the law make mandatory the issuance of the licenses for which application was made. State ex rel. McCarten v. Harris, supra.

McCarten, as the successful applicant for a peremptory mandate, is entitled, under the provision of section 9858, Revised Codes of Montana of 1935, to recover the damages which he has sustained. The evidence introduced by respondent as to the amount and reasonableness of the attorney's fee to be allowed stands undisputed and sustains the trial court's award.

The statutes governing the issuance of licenses and the decisions of this court construing such statutes warrant the trial court's judgment directing the Montana Liquor Control Board to issue the licenses to respondent and awarding him his costs and damages. See McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229; State ex rel. McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292; McFatridge v. District Court, 113 Mont. 81 122 Pac. (2d) 834; State ex rel Wiley v. District Court, Mont., 164 Pac. (2d) 358; Stephens v. City of Great Falls, Mont., 175 Pac. (2d) 408.

The judgment is affirmed.

Mr. Justices Cheadle and Metcalf, concur.

Mr. Justice Angstman (dissenting):

Under Chapter 84, Laws of 1937, it is declared as the policy of the state ''to insure the entire control of the sale of liquor in the Montana liquor control board.'' Or as stated in the per curiam opinion on motion for rehearing in State ex rel. Wiley v. District Court, Mont., 164 Pac. (2d) 358, 365, with respect to the licensing of retail liquor dealers ''the legislature has seen fit to place the unfettered, full, complete, and entire control in the Montana liquor control board which it created for such purpose.''

Under section 9 of Chapter 84, Laws of 1937, no one is entitled to a liquor license unless such person has a beer license. Under the most recent decision of this court (Stephens v. City of Great Falls, Mont., 175 Pac. (2d) 408, 413), after holding that the city has no authority or control over the number of

liquor licenses that may be issued in the city, the court said:

"A somewhat different situation obtains as to the Montana Beer Act, Chapter 106, Laws of 1933, construed and interpreted by this court in State ex rel. McIntire v. City Council of City of Libby, 107 Mont. 216, 82 Pac. (2d) 587. In section 45 of the Montana Beer Act, now section 2815.44, Revised Codes of 1935, the legislature, after fixing the annual license fees to be paid to the state by those operating under the Act, provided: 'And provided further, that nothing in this act contained shall in any manner be so construed as to prohibit or prevent cities and incorporated towns from enacting ordinances for the enforcement of this act and to license and regulate places of business where beer is sold, notwithstanding the fact that the persons conducting such places have obtained a license from the board, the only restriction hereby imposed being that such regulatory license so imposed by any city or town shall be reasonable and not in excess of the amount imposed by the state.'

"By virtue of the quoted provisions of section 45 of Chapter 106, Laws of 1933, section 2815.44, Revised Codes of 1935, the legislature has expressly granted to the cities and towns of this state the power to license places of business, within their limits. where beer is sold subject, of course, to the requirements that the ordinances providing therefor be not 'inconsistent with the laws of the United States or the state' (sec. 4958, Rev. Codes of 1935); that they be reasonable and not in excess of the amount imposed by the state (sec. 45, Ch. 106, Laws of 1933) and that they do not have the effect of inhibiting the issuance of a license by the state liquor control board nor of nullifying the license issued by the board. State ex rel. Wiley v. District court, supra."

It was thus squarely held in that case that the city may limit the number of beer licenses within the city. Hence if the city may by ordinance limit the number of beer licenses within the city, then certainly the liquor control board is not acting arbitrarily or capriciously in recognizing the wishes of the city in that respect as expressed by a valid city ordinance.

I do not agree that any of the prior decisions of this court sustain the conclusion reached by my associates.

The cases of McFatridge v. District Court, 113 Mont. 81, 122 Pac. (2d) 834, McCarten v. Sanderson, 111 Mont. 407, 109 Pac. (2d) 1108, 132 A. L. R. 1229, and State ex rel McCarten v. Harris, 112 Mont. 344, 115 Pac. (2d) 292, are not comparable to this because there the premises involved were situated outside of a city or town and the counties are not given authority to speak locally on the subject except by county option. Secs. 2815.53 to 2815.59 and secs. 2815.96 to 2815.103, Rev. Codes of 1935. Whereas, as above noted, cities have the authority to pass ordinances limiting the number of beer licenses within the city.

Moreover, the cases relied upon had to do with local action which, if sustained, had the effect of nullifying a license issued by the state board. This was made clear in the per curiam opinion on motion for rehearing in the case of State ex rel. Wiley v. District Court, supra, where it was said: ''Again it is quite clear that neither the decision in the instant case nor that in the McCarten case, supra, has any effect whatever upon zoning ordinances or matters other than the power of towns and cities to interfere with the control by the Montana liquor control board of the liquor traffic in this state * * *.'' Here the state board has not issued a license and declined to do so and hence the city ordinance does not interfere with the control of the liquor board or in any wise affect a license issued by the state board. The board looks at the question realistically. It knows that the local authorities must police the places where beer or liquor is sold. It knows and the evidence shows that an increase in the number of places where beer or liquor is sold increases the number of places requiring police surveillance. I think the board should be commended in its action in yielding to the wishes of the local authorities in restricting the number of establishments where beer and liquor are sold to the number that can be adequately policed by them. By doing this it is not delegating authority to the city. The legislature has already

delegated that authority to the city as to beer licenses (Stephens v. City of Great Falls, supra), and without a beer license, no liquor license can be issued, sec. 9, Ch. 84, Laws of 1937. Nor is it declaring a legislative policy by regulation No. 49. That regulation declares the policy of the board and in effect it states that when a city or town exercises the power given to it by the legislature to restrict the number of places where beer may be sold within the city, the board will not force upon such city or town a greater number of beer or liquor establishments.

I think the liquor control board properly exercised the discretion vested by law in it by declining to force upon the city more beer or liquor establishments than the city authorities felt they could adequately police. I think it is fallacious to hold that all measure of local control has been removed by the legislature.

If the conclusion announced by the majority is correct, then the state board would not be justified in rejecting an application when the applicant is qualified and the premises are suitable though situated in a residential part of the city where by local zoning ordinances such places are closed to the liquor traffic. I think the state board was justified in adopting regulation No. 49 and in denying the application. I think the judgment of the lower court should be reversed and the cause remanded with directions to uphold the action of the board.

Mr. Justice Choate.

I concur in the dissenting opinion of Mr. Justice Angstman.

It seems to me unreasonable to conclude that the legislature gave to cities the power to limit by ordinance the number of places where beer may be sold (Stephens v. City of Great Falls, Mont., 175 Pac. (2d) 408), made provision that a liquor licensee must also have a beer license issued "under the laws of Montana" (sec. 9, Ch. 84, Laws of 1937), but denied to the state liquor control board the "discretion" to limit the issuance of beer or liquor licenses to accord with the number legalized by city ordinances.